## MILLS v. UNITED STATES.

### No. 11046.

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 1952.

Decided April 24, 1952.

H. Clifford Allder, Washington, D. C., with whom Charles E. Ford, Washington, D. C., was on the brief, for appellant.

---

Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., and John C. Conliff, Jr., Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

George Morris Fay, U. S. Atty., Washington, D. C., when the record was filed, also entered an appearance for appellee.

Before PRETTYMAN, PROCTOR, and BAZELON, Circuit Judges.

PROCTOR, Circuit Judge.

This appeal presents a question, often recurring, as to the admissibility of incriminating evidence seized from an accused when arrested without a warrant. It arises here in connection with the conviction of appellant for engaging in the operation of a numbers game and knowingly possessing numbers slips. 22 D.C. Code 1940, §§ 1501, 1502.

■ There is no question as to the governing principles of law. They have been clearly stated in United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; and Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The test is whether there was probable cause for the arrest. Were the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed? Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310; Carroll v. United States, supra, 267 U.S. at page 162, 45 S.Ct. at page 288. And the validity of the arrest and search must be determined by its reasonableness in the light of the circumstances of the particular case. Brinegar 338 U.S. at page 176, 69 S.Ct. at page 1311; Rabinowitz 339 U.S. at page 63, 70 S.Ct. at page 434.

■ What then were the circumstances in the present case? The arresting officers had been told anonymously that a white man, using a 1939 Buick automobile bearing Maryland license tags with specified numbers, was "picking up numbers"[1] in a certain neighborhood. The officers, in plain clothes, went to the neighborhood and saw appellant park a Buick car and get out. The car bore a Maryland license plate. The first three digits corresponded with those given the officers; the last two were different. The Buick was a 1940 instead of a 1939 model. There was little difference in appearance between the two models. The officers watched and saw appellant enter two apartment buildings in the neighborhood, remaining a few minutes in each. They watched him a second day repeat the same procedure. Leaving one of the buildings he had in his pocket a brown paper bag which was not there when he entered. He drove to another place where he parked and disappeared for a few minutes. When he drove off they lost him in traffic. The following day he entered and left the two apartment buildings on Columbia Road. Three days later, Monday, he entered the two buildings again, then went to 13th Street and entered a house. On one of the foregoing occasions he was counting currency upon leaving one of the buildings. The next day he made his usual visits to the Columbia Road apartments and to the same house on 13th Street. When he came out of the latter, the officers drove up, parked their car, and walked to the side of his car. They saw upon the front seat beside appellant a large brown paper bag, apparently containing something. One officer asked appellant, " 'What have you got in the bag?' " Appellant made no comment. " 'He just sort of grinned.' " The officer said, " 'Well, hand me the bag.' " Appellant did so. The officer found it contained numbers slips and money. Then, as the officer testified, he placed appellant under arrest "As soon as I saw those numbers slips." No evidence was offered by

1. A pick up man is one who goes to designated places and collects numbers slips and the money to cover them from agents who obtain the bets from those who actually make the bets.

or in behalf of appellant. He staked his defense solely upon a motion to suppress the questioned evidence.

There is a permissible inference that the arrest was not made until discovery of the numbers slips in the bag. However, the Government does not go that far. It only argues the point upon the basis of appellant's contention that the arrest occurred when the officer demanded the bag. Assuming, then, that technically the arrest did occur at that time, we think there was probable cause to justify it. We conclude this to be so upon the basis of the entire train of circumstances leading up to the officer's demand for the bag. Although no single circumstance would, of itself, have been sufficient, yet out of the whole combination we find three significant factors.

First, there was the information imparted to the officers by a citizen, which fairly well identified appellant and charged him with "picking up numbers." Whatever motive the informant had, still there was a fair inference that he must have known that appellant was connected with a numbers game, otherwise it is quite unlikely he would have imputed that particular conduct to him. Evidently the officers took the information seriously, for they acted upon it, not recklessly by making an immediate arrest, but cautiously by following appellant's movements on five different days.

Second, surveillance by the officers disclosed a course of conduct by appellant which indicated that he was engaged in a collection business requiring daily calls at the same places, and this the officers doubtless knew was the requisite procedure in the picking·up of numbers slips.

Third, there was the peculiar and significant attitude of appellant when accosted by the officers, simply grinning and refraining from any reply to their questions. We are impressed too by the fact that the officers continued their surveillance of appellant for five days. We think that indicates a fair sense of caution and responsibility which, in turn, lends weight to the view that they acted reasonably in the light of the circumstances.

Complaint is also made that the officers, during the course of their surveillance, had time to apply for a warrant, and therefore should have done so. But we think that was not necessary in view of the fact that there were reasonable grounds to make the arrest. Therefore, as the arrest was legal, it follows in the circumstances that the search and seizure were proper incidents thereto and were consequently reasonable and valid. Only unreasonable searches and seizures are prohibited by the Fourth Amendment. United States v. Rabinowitz, supra. At page 65 of 339 U.S., at page 435 of 70 S.Ct., the Court says:

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"* * * The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. * * *"

This Rabinowitz decision expressly overruled Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, to

the extent that the latter required "a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest * * *." 339 U.S. at page 66, 70 S.Ct. at page 435. We think it also follows that the opinion in McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, referred to by appellant, is likewise restricted.

Affirmed.

BAZELON, Circuit Judge, concurs in the result.