**CONTEE v. UNITED STATES.**

**Nos. 11806–11808.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 24, 1953 and April 27, 1954.

Decided July 15, 1954.

Fahy, Circuit Judge, dissented in part.

Mr. Elliot Bredhoff, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, with whom Mr. Arthur J. Goldberg, Washington, D. C. (appointed by this court) was on the brief, for appellant. Mr. David E. Feller, Washington, D. C. (also appointed by this court) entered an appearance for appellant.

Mr. Gerard J. O'Brien, Jr., Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., William F. Becker, Asst. U. S. Atty., and William J. Peck, Asst. U. S. Atty., Washington, D. C., at time record was filed, were on the brief for appellee. Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before BAZELON, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Michael Contee, Jr., was charged under three indictments with armed rob-

bery, under Sections 2901 and 3202, Title 22, District of Columbia Code (1951). After a trial by jury in the United States District Court he was found guilty and sentenced. These appeals followed.

## I

Our examination of the record has brought to our notice a serious question which was not urged in the briefs or oral argument, namely, whether the trial court erred in failing to suppress certain evidence seized by the police from appellant's rooms. Under Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., we can, of course, notice "Plain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court."

The record discloses that early in the trial the prosecution called Officer Douglas of the Metropolitan Police. He testified that at about 3:30 in the morning of January 3, 1952, he went to appellant's house and knocked on the door. Appellant replied, he said, by asking "Who is it?" Douglas responded, "It is the police." A long interval passed. Douglas knocked again and said, "Come on, open up." During the interval Douglas heard "a door being pushed open near the rear of his room and a sliding sound on the floor." Appellant finally opened the door and the officer arrested him. Douglas opened the door in the rear of the room and found a Navy jacket, a target pistol, and other objects, all in a box inside the adjoining room. Douglas questioned appellant about these objects and was told by the latter that he had found them in Rock Creek Park. Douglas also asked appellant about a number of holdups, but appellant denied having taken part in them. The officer took appellant and the jacket and other objects to the police station, and turned him and the effects over to the Robbery Squad. Douglas further testified that he came to look for the appellant because—and this, he said, was his only source of information—a man had told him that Contee "was the party that had been involved in some

robberies * * * I don't know the man's name even. He was a man that lived in the neighborhood, apparently, and knew Contee." This man was not, Douglas said, one of the complaining witnesses. Early in the course of the examination of the officer, appellant's court-appointed attorney said, "I will have to object to this testimony unless it is established he had probable cause to make an investigation." The court replied that there had been no motion to suppress. Counsel answered, "I was not aware of all this evidence." The objection was overruled.

At the conclusion of Douglas' testimony appellant's counsel said, "In spite of the fact that a motion to suppress was not filed, I think it was clear that the evidence in question taken by the officer was illegally seized and should not be admitted in evidence." The court then said, "I am going to overrule your motion, both on the ground it should have been made before, because the rules seem to contemplate that, but, even so, I think in view of the fact there was a voluntary offering of it to him, it is proper." After further colloquy, the court overruled the objection as to the admission of the coat. It sustained the objection as to certain cartridges and a wallet, evidently on the ground that these latter had not been sufficiently identified.

Rule 41(e) of the Federal Rules of Criminal Procedure provides that a motion to suppress evidence unlawfully obtained "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

We think that under all the circumstances of the present case the court erred in denying the motion to suppress. In the first place, it seems clear that the property in question was illegally seized, in violation of the Fourth Amendment. There was no search warrant, and no arrest warrant. We think it

plain as a matter of law that the appellant did not freely consent to the search. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Higgins v. United States, D.C. Cir., 1954, 209 F. 2d 819; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649. The Government now argues that the search may be justified as an incident of the arrest under the doctrine of United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. But to justify the search on this ground the arrest itself must be valid. United States v. Rabinowitz, supra, 339 U.S. at page 60, 70 S.Ct. 430. Here it clearly was not. The question is—did the officer making the arrest have probable cause to believe that the person arrested had committed an offense? See Mills v. United States, 90 U.S.App.D.C. 365, 196 F.2d 600, certiorari denied, 1952, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643. As we have seen, the officer here testified that an individual who "lived in the neighborhood, apparently, and knew Contee" was his sole source of information. An uncorroborated tip by an informer whose identity and reliability are both unknown does not constitute probable cause to make an arrest.[1] Nor is any exceptional circumstance alleged to have existed here: there is no suggestion that appellant would have escaped, or that there was any necessity for apprehending him in the small hours of the morning.

■■ In the second place, we think the motion to suppress was timely made. Appellant's attorney—appointed by the court—stated that he was not aware of the seized evidence. This statement by counsel would appear to satisfy, prima facie at least, the provision of the rule allowing a motion to be made during trial if the defendant "was not aware of the grounds for the motion." The court made no inquiry to test the validity of counsel's statement, but denied the motion without further questioning. If it had questioned further it would have found that the defendant had been adjudicated mentally incompetent shortly after his apprehension and that he had spent nearly a year thereafter in mental institutions under circumstances to be discussed presently. True, some element of neglect on the part of counsel may have entered in. But under the circumstances we must give the accused the benefit of the doubt, and hold that the court's peremptory rejection of counsel's statement was erroneous. We think that it was plain error affecting substantial rights, within the meaning of Rule 52(b). The conviction must be reversed and a new trial granted.

## II

In this disposition of the case we do not reach the questions posed by counsel in their briefs and argument.[2] Nor do we need to canvass at length the issue, briefed and argued by counsel at our request, of appellant's fitness to stand trial.

■ After appellant's apprehension and arraignment, the District Court appointed counsel to represent him. Counsel moved that appellant receive a mental examination, and the court on February 12, 1952, ordered him committed for that purpose. Physicians' reports were received on March 4 and March 6, advising the court that appellant was of unsound mind and suffering from de-

1. Worthington v. United States, 6 Cir., 1948, 166 F.2d 557; Brown v. United States, 9 Cir., 1925, 4 F.2d 246; United States v. Clark, D.C.W.D.Mo.1939, 29 F. Supp. 138; United States v. Tom Yu, D. C.D.Ariz.1932, 1 F.Supp. 357; United States v. Baldocci, D.C.S.D.Cal.1930, 42 F.2d 567. But cf. Husty v. United States, 1931, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650; Coupe v. United States, 72 App.D.C. 86, 113 F. 2d 145, certiorari denied, 1940, 310 U.S. 651, 60 S.Ct. 1105, 84 L.Ed. 1417.

2. Appellant's original brief and argument urged that the trial was a nullity because of the lack of a formal arraignment and because certain instructions to be given the jury as requested by appellant were denied.

mentia praecox. The United States Attorney thereupon moved the court for a judicial determination of the mental competency of the accused, pursuant to 18 U.S.C. § 4244 (1952), on the basis of the physicians' reports. An inquisition under that statute was held by the court on March 14, during which testimony was received from both doctors. The court found appellant "presently insane and so mentally incompetent as to be unable to understand the proceedings against him, or properly to assist in his own defense." Appellant was then committed to St. Elizabeths Hospital. On January 29, 1953, the Superintendent of the Hospital addressed a letter to the Attorney General of the United States which said, in part, that "It has now been determined that Michael M. Contee, Jr., is mentally competent to stand trial and is able to consult with counsel and properly assist in his own defense." Appellant was then removed to the District of Columbia jail, and without further order of the court was brought to trial on March 3, 1953. This procedure was erroneous, for the reasons stated in Gunther v. United States, 1954, 94 U.S. App.D.C. ——, 215 F.2d 493. Before appellant is again tried, a judicial determination of his competency to stand trial should be made.

### III

One other matter seems to us to require comment. While the case was pending here we inquired of the United States Attorney, by order to show cause, why the Director of the Bureau of Prisons had not acted pursuant to the provisions of 18 U.S.C. § 4245 (1952) with respect to this appellant, in view of numerous indications in the record before us that appellant had long been suffering from mental illness. That section provides a procedure for the relief of convicted persons incarcerated in Federal prisons who, there is probable cause to believe, were mentally incompetent at the time of their trials.[3] In such a case, after the Director of the Bureau of Prisons has made an appropriate certificate, the District Court wherein the conviction was had holds a hearing to determine the mental competency of the accused at the time of the trial. However, a proviso in Section 4245 limits its application to cases where "the issue of mental competency was not raised and determined before or during * * * trial." The United States Attorney in his return stated that it was the view of the Bureau of Prisons and its Director that this proviso barred the application of Section 4245 to Contee, since in his case "a proceeding had been had under 18 U.S.C. § 4244, et seq., and a certificate had been made to the District Court on January 29, 1953, that Contee was competent to stand trial * * *." We think this position erroneous as a matter of law. In appellant's case no judicial determination had been made of the kind of which the proviso in Section 4245 speaks, namely, that he was competent to stand trial. On the contrary, he was the subject of a judicial determination that he was incompetent to stand trial, followed simply by

---

3. The full text reads:

"Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of section 4244 above, and with all the powers therein granted. In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein. If the court shall find that the accused was mentally incompetent at the time of his trial, the court shall vacate the judgment of conviction and grant a new trial."

an administrative finding of competency. Under these circumstances the benefits of Section 4245 should not have been denied him if he was otherwise entitled to them. Our disposition of these appeals, however, makes it unnecessary for us to enter any order on this subject.

The judgments of the District Court will be

Reversed, and new trial granted.

FAHY, Circuit Judge (dissenting in part).

In part II of the opinion the court takes the position that after the March 1952 judicial determination, pursuant to 18 U.S.C. § 4244, that the accused was then mentally incompetent to go to trial, a further judicial determination, of competency, was required by statute before his trial a year later. The court relies upon Gunther v. United States, 94 U.S. App.D.C. ——, 215 F.2d 493, decided July 1, 1954.

The determination of incompetency in March 1952 was the result of proceedings initiated by motion filed pursuant to 18 U.S.C. § 4244. See Perry v. United States, 90 U.S.App.D.C. 186, 195 F.2d 37. Such motion was for a "judicial determination" as to the accused's mental competency; when that determination, to the effect he was then incompetent to stand trial, was made, the purpose of the motion was fulfilled. It was no longer pending. A period of hospitalization at St. Elizabeths Hospital followed. Then came the certification of its Superintendent, in February 1953, that the accused was of sound mind, after which he was brought to trial.

Proceedings for a judicial determination under § 4244 are initiated only by motion of the United States Attorney, or of defense counsel, or of the court *sua sponte*. At the trial accused was represented by the same able counsel who had initiated the § 4244 proceedings in 1952. He did not move for another inquiry as to competency. Nor did the United States Attorney. Nor did the court. The record shows that all were fully aware of the 1952 determination of incompetency.

The case of Gunther v. United States, supra, is illustrative of a situation which calls for another inquiry before trial; but I think this is not so, as the court there held, because of a requirement of the statute itself, no motion under it for further inquiry having been made. It is so because, apart from statute, proper administration of the criminal law called for another inquiry in the factual situation presented. See excerpts from the legislative history quoted in the court's Gunther opinion. My difficulty is that the opinion grounds the necessity for a further judicial determination upon the statute itself.

The statute prescribes its method of raising the issue of competency; that is, as above set forth, by motion.[1] The court adds a provision, not inserted by Congress, to the effect that where there has once been a judicial determination, of incompetency, another, of competency, is a statutory requirement in any and all circumstances, before a trial can be had, notwithstanding evidence of restoration to competency accepted as satisfactory by counsel for the accused, by the United States Attorney, and by the court, none of whom invokes by motion the available statutory provisions for a further inquiry.

The Gunther opinion, furthermore, contains I think two inconsistencies with the statute it purports to follow. In the first place, in relying upon the original motion as if it were still pending, the court nevertheless ruled that the case could go to trial after a determination not based upon the only kind of hearing such a motion leads to once an adverse report by a court appointed psychiatrist has been made, as was there done. In the second place, in the situation there assumed by the court to exist, namely, an effective motion before trial, the stat-

1. After trial the issue may be raised in accordance with the provisions of 18 U.S.C. § 4245.

ute requires that the judicial determination precede the trial. Perry v. United States, supra. Nevertheless, the court did not grant a new trial so that the determination of competency might precede it, but held that such determination might be made long afterwards, thus assimilating § 4244 proceedings to those under § 4245.[2]

2. In not reversing and remanding for a new trial in Gunther, under the procedure adopted in Perry, the court seeks to distinguish Perry on the ground that no previous determination of incompetency had there been made and hence there was no medical certificate of recovery and competency to stand trial. It seems to me that the determination of incompetency in Gunther is a more compelling reason for following the Perry procedure than existed for its original adoption, which nevertheless I think was sound.