Samuel **WRIGHTSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 12038.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 2, 1954.

Decided March 10, 1955.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Saul G. Lichtenberg, Washington, D. C. (appointed by the District Court), with whom Mr. Evan T. Davis, Washington, D. C., was on the brief, for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., and Messrs. Lewis Carroll and Arthur McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant Wrightson was indicted, tried and convicted with three other accused persons for an armed robbery. At the trial a box, a gun, and some cartridges were offered in evidence and admitted over objection. The ground of the objection was that the evidence was seized in an illegal search.

Police officers arrested Wrightson in his apartment at about five-thirty o'clock on the morning of July 29, 1953. The robbery for which he was ultimately indicted had occurred July 17, 1953, twelve days prior to the arrest. The officers had neither an arrest warrant nor a search warrant. The testimony as to why they were at Wrightson's apartment early in the morning almost two weeks after the robbery, was in answers to two questions asked by the prosecuting attorney. The first question, put to one of the arresting officers, was, "And as a result of your investigation of that alleged robbery did there come a time when you arrested the defendant Wrightson?", to which the officer replied, "I did, sir." In the second question Wrightson was asked, "Did he [the officer] tell you where he got the information that you were involved?", and he replied, "No, sir; he said he had an anonymous tip." [1]

The officers did not testify on direct examination as to how they obtained entrance to the apartment, but on cross examination the following question was put and answer given:

> "Q. Did you not gain admission in the apartment by knocking on the door, stating that there was a fight in the hall, there's blood all over the place, and this is the police and we are investigating, open the door, or we will knock it down?
>
> "A. I did, sir."

Several people were in the room. The officer described the arrest thus: "I went to each one and asked him his name, and when I came to the defendant Wrightson he said his name was Sam Wrightson. I placed him under arrest at that time." Wrightson protested there had not been any fight, and the officer told him he was being arrested "for investigation of robbery." Then the officer observed on a bureau the box in question with some cartridges and, upon Wrightson's information, found the gun under a pillow on the bed.

The Government says Wrightson never, in the trial court, attacked the legality of the arrest. But he obviously rested his attack upon the search in major part upon the illegality of the arrest, and, moreover, at one point in a

---

1. Another vague reference by one of the officers bears remotely upon the question. When asked if he did not break up the furniture, etc., the officer said he was looking for Government checks—"I had information that the Government checks were in that apartment."

colloquy with the prosecutor, his counsel specifically said the point was that if the arrest was illegal the search was illegal.

A police officer may arrest for a felony without a warrant, if he has probable cause to believe that a felony has been committed and that the arrested person committed it.[2] This record does not show that the officers had any cause,[3] probable or otherwise, to believe that Wrightson had committed the robbery. Maybe they had ample cause to believe it, but they did not reveal the cause. After reading the entire transcript we do not know why the officers were at Wrightson's apartment, especially at such an hour and so many days after the robbery, or why the officer arrested Wrightson as soon as he learned his name. The officer, by simply adopting, without more, the prosecutor's suggestion that "as a result of your investigation" the arrest was made, took to himself the authority to decide the sufficiency of cause for belief of Wrightson's guilt. The officer had no such power.

The point here is that at the trial, when the search and the arrest were under attack as illegal, the officer and the prosecutor chose not to reveal what cause there was for the arrest and thus not to support its legality. There is law which governs arrest, that law is binding upon police officers, and persons arrested have a right to invoke it.

It is perfectly true that after the arrest Wrightson was identified by the victim of the robbery and confessions were presented and received. But the tendency of police officers to arrest people without warrants and without probable cause is a matter of vast public importance, and it has been of such importance since Colonial days. Courts cannot put a stamp of approval upon actions of the police when the officers, challenged by an accused, fail or refuse to demonstrate compliance with the rules which circumscribe their authority. Certainly the police have been warned enough in these respects, by the Supreme Court of the United States,[4] by this court,[5] and by many other courts.[6]

■ An officer must show "probable cause" to get a warrant from a magistrate, and he must have "probable cause" to make an arrest without a warrant. The Rules of Criminal Procedure provide for the issuance of warrants. They may be issued upon a complaint, an indictment, or an information.[7] For a warrant to be issued upon a complaint probable cause must appear from the complaint,[8] and, of course, probable cause is inherent in an indictment or information.

■■ We are here at the very heart of due process of law and, more directly, at the essence of the Fourth Amendment.

2. Shettel v. United States, 72 App.D.C. 250, 113 F.2d 34 (D.C.Cir.1940).

3. Wrightson's suggestion of "an anonymous tip" was (1) hearsay and (2) not sufficient. Contee v. United States, 94 U.S.App.D.C. ——, 215 F.2d 324, 327 (D.C.Cir.1954).

4. E. g., Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

5. E. g., Maghan v. Jerome, 67 App.D.C. 9, 88 F.2d 1001 (1937); Ellison v. United States, 93 U.S.App.D.C. 1, 206 F. 2d 476 (1953); Mills v. United States, 90 U.S.App.D.C. 365, 196 F.2d 600 (1952), certiorari denied, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952);

Accarino v. United States, 85 U.S.App. D.C. 395, 179 F.2d 456 (1949); Gatewood v. United States, 93 U.S.App. D.C. 226, 209 F.2d 789 (1953); and see Shettel v. United States, supra note 2.

6. E. g., Bushardt v. United Inv. Co., 121 S.C. 324, 113 S.E. 637, 35 A.L.R. 637 (1922); State v. Williams, 328 Mo. 627, 14 S.W.2d 434 (1929); State ex rel. Fong v. Superior Court, 29 Wash.2d 601, 188 P.2d 125 (1948), certiorari denied, 337 U.S. 956, 69 S.Ct. 1525, 93 L.Ed. 1755 (1949); State, for Use of Brown v. Spangler, 120 W.Va. 72, 197 S.E. 360 (1938); Wiley v. State, 19 Ariz. 346, 170 P. 869, L.R.A.1918D, 373 (1918); Kalkanes v. Willestoft, 13 Wash.2d 127, 124 P.2d 219 (1942).

7. Fed.R.Crim.P. 4(a), 9(a), 18 U.S.C.A.

8. Id., 4 (a).

Justification for a search without a warrant is here sought on the ground that it was incidental to an arrest without a warrant. When the arrest is held legal the incidental search becomes legal. When the arrest is stripped of necessity for probable cause, the search is stripped of the same necessity. But the Fourth Amendment imposes specific requirements upon search warrants. " * * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation * * *." That requirement was regarded by the people of that day as so essential that ratification of the Constitution was conditioned upon its inclusion in a formal pronouncement by way of an Amendment to the document itself. To hold that a search warrant cannot issue except upon probable cause shown under oath, but that a search can be made without any factual demonstration of probable cause so long as it is made without a warrant, would be a deliberate circumvention of the constitutional prohibition. We cannot lightly toss away that safeguard by the roundabout device of removing the necessity for a showing of probable cause upon an arrest without a warrant and letting the corollary search without a warrant follow as of course. Moreover, that the Fourth Amendment covers warrants of arrest is established.[9] The Amendment protects the people against the seizure of their persons as well as against the search of their houses.

The forefathers had reason for all this circumscription of the power to search houses and to seize people. Such searches and seizures are the embryo of tyranny, and they well knew it. Once those safeguards are gone, the supremacy of force is complete, potentially even if not presently factually.

Mr. Justice Jackson, writing for the Court in United States v. Di Re,[10] said this:

"The Government's last resort in support of the arrest is to reason from the fruits of the search to the conclusion that the officer's knowledge at the time gave them grounds for it. We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

And further he said:

"We meet in this case, as in many, the appeal to necessity. It is said that if such arrests and searches cannot be made, law enforcement will be more difficult and uncertain. But the forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment. Taking the law as it has been given to us, this arrest and search were beyond the lawful authority of those who executed them. The conviction based on evidence so obtained cannot stand." [11]

The requirement of "probable cause" for action without a warrant is surely no less exacting than is the necessity for "probable cause" for the issuance of a warrant. But, if officers can arrest without a warrant and never be required to disclose the facts upon which they based their belief of probable cause—if, in other words, they have an untouchable power to arrest without a warrant,— why would they ever bother to get a warrant? And the same obvious conclusion follows if the courts, when an arrest is attacked as illegal, will assume, without facts, that an arrest without a warrant was for probable cause. To

9. See, e. g., Albrecht v. United States, 273 U.S. 1, 5, 47 S.Ct. 250, 71 L.Ed. 505 (1927); McGrain v. Daugherty, 273 U. S. 135, 156, 47 S.Ct. 319, 71 L.Ed. 580 (1927).

10. 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948).

11. Ibid.

strike down all factual requirements in respect to probable cause for arrests without a warrant, while maintaining them for the issuance of a warrant, would be to blast one of the support columns of justice by law.

All these considerations are magnified and intensified in the case at bar by the facts that the officers, without a warrant, demanded admittance to a residence at five-thirty in the morning twelve days after the alleged offense.

 In respect to two crucial issues our dissenting judge rests his opinion upon these assumptions: He assumes, without facts or statements in the record, that the officers would not have been at Wrightson's apartment or have arrested him without a warrant unless they had had probable cause to believe he had committed a felony;[12] and he assumes conclusively that this trial judge would not have committed an error of law. We cannot accept or proceed upon either of those assumptions. We are here for the purpose of ascertaining and correcting through painstaking study errors which naturally and inevitably occur in the pressure of the trial room; and this is so even if the so-called "errors" lie only in differences of opinion. We have that function and that duty. "Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' "[13]

██ In the case at bar the arrest cannot stand under attack in the absence of any factual showing that the officers at the time of the arrest had probable cause to believe that Wrightson had committed the crime. Since the arrest cannot stand,

the search, incidental to it and without a warrant, also falls.

 We come next to the Government's contention that the objection to the admission of the evidence in dispute came too late under Rule 41(e) of the Federal Rules of Criminal Procedure. The trial court correctly interpreted the rule as providing that a motion to suppress shall be made before trial but as also giving the court a discretion to entertain it at the trial. Our question is whether in disposing of Wrightson's objection at the trial the court declined to entertain it or entertained and denied it. The following are the court's statements, with emphasis supplied to the key phrases:

"The Court: The rules provide for making a motion to suppress.

"Mr. Conn: I know that.

"The Court: And if a motion to suppress is not made it is in the discretion of the court whether or not to entertain an objection at the trial.

\*　　\*　　\*　　\*　　\*　　\*

"By the Court:

"Q. Did you recover this box in Wrightson's apartment at the time you arrested him there?

"A. I did, Your Honor.

"The Court: Very well. *I will overrule the objection because the search was incidental to the arrest* and therefore is legal.

\*　　\*　　\*　　\*　　\*　　\*

"Mr. Conn: To preserve the record on my objection to any of these things later being introduced in evidence.

"The Court: I am going to exclude this line of examination because the rules provide that any such

---

12. Even as to the sole testimony of an officer quoted in the dissent, that the officer "had information" as to the Government checks, the dissenting opinion assumes without evidence that the "information" was reliable within the requirements established by many cases. For example, see Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543

(1925); Husty v. United States, 282 U. S. 694, 700, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Worthington v. United States, 166 F.2d 557 (6 Cir. 1948); and this court's opinion in Contee v. United States, supra note 3.

13. Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 249, 71 L.Ed. 520 (1927).

objection as that must be made before the trial by a motion to suppress. No such motion was made.

"In addition to that *I have already ruled,* irrespective of that, *that a search of premises where an arrest is made may be made incidental to the arrest,* in connection therewith.

"And I may remind counsel of the decision of the Supreme Court in the Harris Case [Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399] and the Rabinowitz case [United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653] that, as a rule, even if there is a valid objection, which I hold that there is not, it should have been raised by a motion prior to the trial, under Rule 41 of the Federal Rules of Criminal procedure, but that perhaps becomes academic because *I hold there was no illegality in the search.*

\*　\*　\*　\*　\*　\*

"The Court: In any event *I hold that the search was legal.* I would not sacrifice anyone's rights because of a technical violation of the rules.

"Mr. Conn: I know you wouldn't.

"The Court: If I thought the evidence was illegally obtained I would exclude it whether the motion was made or not.

"Mr. Conn: That I know, Your Honor.

"The Court: But *I hold it was legally obtained.*"

It is clear from the foregoing that the trial court entertained the objection and overruled it, holding on the merits of the objection that the search was legal because incidental to an arrest.[14] Under these circumstances we must deal with that ruling as the trial court made it, and we conclude the ruling as made upon the record then before the court was erroneous.

One further observation might be made. Our dissenting brother seems to intimate that in any event guilt is clear and the disputed evidence is inconsequential. We are not dealing with a mere error of law occurring in the course of trial and which can be disregarded as harmless. The appellant invoked a constitutional right, and we are dealing with the constitutional question. But even as to an erroneous instruction the Supreme Court has given us strict directions. In Bollenbach v. United States,[15] in response to a contention that the evidence of guilt was abundant and that therefore error in the court's charge to the jury was not ground for reversal of the conviction, the Court said:

"\*　\*　\* it may not be amiss to remind that the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts.

"\*　\*　\* All law is technical if viewed solely from concern for punishing crime without heeding the mode by which it is accomplished. The 'technical errors' against which Congress protected jury verdicts are of the kind which led some judges to trivialize law by giving all legal prescriptions equal potency. See Taft, Administration of Criminal Law (1905) 15 Yale L.J. 1, 15. Deviations from formal correctness do not touch the substance of the standards by which guilt is determined in our courts, and it is these that Congress rendered harmless. Bruno v. United States, 308 U.S. 287, 293–294 [60 S.Ct. 198, 84 L.Ed. 257]; Weiler v. United States, 323 U.S. 606, 611 [65 S.Ct. 548, 89 L.Ed. 495]. From presuming too often all errors to be 'prejudicial,' the judicial pendulum need not swing to presuming

---

14. The court nowhere specifically held the arrest to be legal but apparently assumed it.

15. 326 U.S. 607, 614–615, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946).

all errors to be 'harmless' if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be."

Reversed and remanded for a new trial.

WILBUR K. MILLER, Circuit Judge (dissenting).

In indicating my reasons for dissenting, I find it necessary to make a somewhat fuller statement of facts than does the majority opinion.

July 17, 1953, the appellant, Samuel Wrightson, and three others, all armed and prepared to kill, robbed a super market in the District of Columbia. Pursuant to a pre-arranged plan they waited in the vicinity until the manager, William H. Soper, came out of the store some 45 minutes after the closing hour of 9:00 p. m. Then, with two of the bandits acting as lookouts, Wrightson and another forced Soper at gunpoint to re-enter the store, open the safe, and turn over to them about $7,000 in money and several thousand dollars more in government and personal checks. They also took a white metal box containing about $40.00 in pennies. The four robbers then repaired to Wrightson's apartment where they divided the spoils.

Wrightson was arrested in his apartment early in the morning of July 29.

A white metal box, similar to that taken from the super market, and a box of cartridges were in plain view on a dresser. Asked where the gun was that went with the bullets, Wrightson said it was under the pillow. The articles mentioned were seized by the arresting officers. Wrightson and his three accomplices, who were arrested at different times and places, made full and complete confessions to several policemen and other persons. Wrightson asked that an assistant United States attorney be present to hear his confession, apparently with the idea he would be treated more leniently if the prosecutors knew he had "co-operated" with the officers. E. Riley Casey, an assistant United States attorney, was called, whereupon Wrightson told him and the others the whole story of the robbery.

The four defendants were tried together. Their separate confessions were detailed by the Government witnesses who received them and of course the victim, Soper, testified concerning the robbery and, as the majority say, identified Wrightson as one of the two principal actors. In addition, the white metal box, the cartridges and the pistol were received as Government exhibits over Wrightson's objection.

The other three defendants took the stand and repudiated their confessions, but Wrightson did not testify.[1] All four were found guilty by the jury, but only Wrightson appeals. His sole ground for reversal is alleged error in admitting the exhibits.

Wrightson's objection to the introduction of the articles seized in his apartment following his arrest was based upon the theory that the arrest without a warrant was unlawful and that, consequently, the property was illegally seized

---

1. That is, he did not testify in his own defense before the jury. He did give testimony in a hearing before the judge on the admissibility of his confession, in the course of which he said:

"* * * Mr. Casey told me who he was and showed me his credentials, and I asked him if there was any possible chance you know of getting my case in the right court and before the right judge, and he said that he couldn't guarantee that I would go before any certain judge or what amount of time that I would get, but he said I would get every consideration due to me."

without warrant. This objection was tantamount to a motion to suppress for use as evidence the exhibits offered by the Government.

A defendant's right to move to suppress evidence is governed by Rule 41(e) of the Federal Rules of Criminal Procedure, the pertinent portion of which is as follows:

> "(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized * * to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant * * *. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall * * * not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

Wrightson did not make a pretrial motion to suppress, although he had ample opportunity to do so and was well aware before the trial began of such ground as he had for making the motion —the alleged illegality of his arrest without a warrant. In these circumstances, Rule 41(e) leaves it to the discretion of the District Court either to entertain the motion and decide it on the merits, or to deny it without hearing or consideration on the ground that it came too late.

This provision of Rule 41(e) gives rise to the basic fundamental question in this case, which should be first considered and determined. I cannot state it more succinctly than the majority opinion does when it says, "Our question is whether in disposing of Wrightson's objection at the trial the court declined to entertain it or entertained and denied it." The correct answer to this threshold question,—which I shall show later is that the trial judge declined to entertain the objection—is dispositive of this case. For, if Wrightson's objection to the exhibits (which was in effect a motion to suppress) was denied because it was not made before the trial, no reason for reviewing the ruling appears and the judgment should be affirmed without further discussion. This proposition is not denied by the majority opinion.

On the other hand, if the trial judge considered the merits of the motion to suppress the exhibits and denied it for the sole reason that he thought the arrest was legal, it is of course necessary for this court to go on from the threshold question and consider the subsidiary problem which then arises: was there probable cause for the arrest without warrant?

The majority seem to regard the subsidiary question as the more important, since they take it up first and devote the bulk of their opinion to it. They conclude the arrest was illegal and then turn to the initial fundamental question, to which they give short shrift; they answer it merely by quoting some remarks of the trial judge and by concluding therefrom—incorrectly, I think—that he "entertained the objection and overruled it." This is, in my view, the basic error in the court's opinion.

In sum, my brothers say the judge decided to consider the motion on its merits and erred in denying it because they hold the record does not show the officers had probable cause to believe Wrightson had committed a felony and so does not show that the arrest without a warrant was legal. Thus they award a new trial to a self-confessed armed robber because of what seems to me to be an erroneous notion that the trial court invaded a constitutional right of the bandit by denying his tardy motion to suppress, thereby permitting the introduction of certain exhibits which had practically no probative value and

could have had very little, if any, part in leading to the jury's verdict.

In the interest of clarity, I follow the majority's example and take up the questions in inverse order. I first discuss the question concerning the illegality of the arrest, although I am clear it does not properly arise because the trial judge did not entertain the motion to suppress on its merits, as I shall show; but I am also convinced that the subsidiary question is being incorrectly answered by the majority of the court.

My view is that, although there was no separate hearing before the judge as to probable cause for arresting Wrightson, as there would have been had the motion to suppress actually been considered on its merits, the record made before the jury incidentally but sufficiently shows the officers had probable cause for their undoubted belief that Wrightson had committed this particular felony. One of the arresting officers testified he arrested Wrightson as the result of his investigation of the robbery, and added that he "had information that *the* Government checks were in that apartment." (My italics.) The word "the" is significant in view of the fact that a number of government checks were stolen from the super market by Wrightson and the other bandits.

And yet the majority say, "\* \* \* [W]e do not know why the officers were at Wrightson's apartment, especially at such an hour and so many days after the robbery \* \* \*." To me the reason for their presence there is clear: their investigation had led them to believe Wrightson had committed the crime and they had been informed that some of the fruits of the robbery were in his apartment. That is why they went to Wrightson's apartment and that is why, when he gave his name, they instantly arrested him. Certainly the officers believed Wrightson had committed the robbery and had reasons for their belief.

But, as I have said, the legality of the arrest is not properly in issue. No question concerning it arises because the trial court's ruling was not based upon it. Consequently, regardless of the existence of probable cause for arrest without warrant, the judgment should be affirmed because the trial judge exercised his discretion not to consider the merits of the motion to suppress. This is so because the record as a whole shows, I think, that Wrightson's objection was overruled on the ground that it came too late; and the appellant agrees, saying in his brief: "In the instant case, the court would not suppress the evidence *because a motion to suppress had not been made before the trial.*" (Emphasis supplied.) Despite this concession by the appellant, the majority of the court disagree with him and grant him a new trial because they disagree. They choose to construe the remarks of the trial judge as showing he considered the motion to suppress on its merits and then denied it.

There were numerous colloquies between bench and bar, as Wrightson's objection to the exhibits was repeatedly overruled. Some of the trial judge's remarks concerning the basis of his ruling are seemingly equivocal and at times apparently contradictory, as the majority opinion shows by quoting therefrom. Even so, his remarks taken as a whole permit the inference that the motion to suppress was denied as being too late, equally as well as they permit the inference drawn by the majority. For example, the judge made this statement, which is quoted (but with different emphasis) in the majority opinion:

> "The Court: I am going to exclude this line of examination *because the rules provide that any such objection as that must be made before the trial by a motion to suppress. No such motion was made.*
>
> "In addition to that I have already ruled, irrespective of that, that a search of premises where an arrest is made may be made incidental to the arrest, in connection therewith."

None of the judge's statement should be isolated. Everything he said should be considered in the light of the factual

and procedural situation disclosed by the whole record, and in the light also of an important provision of Rule 41(e), to which I shall allude. So considered, the basis for overruling the motion to suppress becomes clear as being that it was made too late. The trial judge said at the outset and throughout his discussion that the rule requires the motion be made before trial. His position may be fairly summarized as being that he denied the motion because it came too late, but that he would not do so if he thought from what had been said in evidence that it might have merit; for, if he thought that, he would exercise his discretion to consider the motion and receive evidence out of the jury's presence on any issue of fact necessary to decision thereon.

I can attribute no other significance to the trial judge's ruling, not only because of what he said, but also because of the significant fact that he did not conduct a hearing, apart from the jury, on the issue of the legality of the arrest without a warrant. Nobody is more conversant with the rules of civil and criminal procedure than is the learned trial judge.[2] Had he considered the motion to suppress on its merits, he would have been quick to follow the peremptory provision of Rule 41(e) that in hearing such a motion, made either before or during trial, "The judge shall receive evidence on any issue of fact necessary to the decision of the motion." Like my brothers of the majority and like me, indeed like all human judges, the district judge who tried this case is capable of error; but in view of his experience, I think it fair to say it is highly improbable that he overlooked or deliberately disobeyed this simple but imperative sentence in the very rule under which he was acting.

That he conducted no hearing on the motion is, to me, convincing proof that, as he said, he denied it "because the rules provide that any such objection as that must be made before the trial by a motion to suppress. No such motion was made." The Government was afforded no opportunity to show the reasons why the officers believed Wrightson had committed the robbery, as it would have been if the motion had been considered on its merits in a separate hearing. Had the inquiry been entered into, undoubtedly the prosecutor would have attempted a more extensive showing of reasonable cause than was contained in the more or less incidental statements on that subject made by the arresting officer, to which I have referred.

The majority express concern over the tendency of police officers to arrest people without warrants and without probable cause. If there is such a tendency, I too am disturbed by it and agree that it should be judicially condemned and curbed. But I do not agree that the arrest of Wrightson indicates such a tendency. Officers occasionally make mistakes in that regard, but I am not aware of any definite tendency on their part—locally, at least—to abuse the power of arrest without warrant.

I am much more disturbed over what seems to me to be a judicial tendency in recent years toward a rather mawkish exaggeration of the rights of criminals, particularly in search and seizure and confession cases, with too little concern for the protection of the public. We should, of course, recognize and safeguard the legal and constitutional rights of even a confessed and confirmed criminal like Wrightson. (This is his fifth robbery conviction.) But the duty to do so does not require us to choose between two alternatives that which leads to reversal of his conviction because of the admission of inconsequential evidence, when the choice of the other alternative is equally, if not more, reasonable and logical. We should not lightly attribute wrongdoing to the police who, after all, are not enemies but rather protectors of society.

---

**2.** Judge Alexander Holtzoff, co-author of an extensive and useful work on federal practice and procedure, covering both civil and criminal rules.

I think Wrightson, armed bandit and potential murderer, should serve the term of imprisonment to which he was sentenced.