**UNITED STATES of America**

**v.**

**Jimmy CANTY.**

**Crim. No. 3–69.**

United States District Court
District of Columbia.

March 10, 1969.

David Bress, U. S. Atty., Harold Sullivan, Asst. U. S. Atty., for plaintiff.

John Perazich, Washington, D. C., for defendant.

PRATT, District Judge.

This is a motion by defendant Jimmy Canty, Criminal Case No. 3–69, for the suppression of evidence and for the return to him of certain monies. Defendant contends (a) that his arrest was without probable cause and thus invalid, and (b) that the search incident to the arrest was unlawful and that the property seized must be suppressed under the "fruit of the poisonous tree" doctrine. Evidence was heard at a hearing held on January 31, 1969.

## FINDINGS OF FACT

Shortly before 5:30 p. m. on November 5, 1968, Officer James Hale of the Metropolitan Police Department, while walking a beat in the vicinity of the Safeway store at 645 Milwaukee Place, S. E., Washington, D. C., was informed by a citizen that the store had been robbed. Officer Hale immediately went to the store and obtained a description of the robber from the cashier (Negro-male, between 18 and 20 years of age, slim build, dark skin, attempting to grow an African bush haircut, and wearing a brown leather jacket). Additionally, he learned that nine hundred dollars in twenty-dollar bills had been taken.

While engaged in conversation, the store's telephone rang and Hale was told that a female caller had information regarding the robber's identity. Hale then engaged in a five-minute question and answer conversation from which he received the following information:

(1) The caller was in front of the Safeway store attempting to enter it when a person came out, bumped into her, and then continued to run across the parking lot;

(2) She knew and recognized the person as "Jimmy";

(3) He had something in his hand (the officer was unable to recall if she said that it was money or a bag);

(4) She immediately entered the store and was told by people pointing toward the retreating figure that he had just robbed the store;

(5) She gave a description of the defendant;

(6) She gave the name and nearby address of his girlfriend;

(7) She stated that he had passed some bad checks in the John Howard Clothing store;

(8) She said that he hung around the clothing store and might be there now; and

(9) She knew Jimmy to be a member of a local gang and because of fear of retribution, she was not going to divulge her own identity.

Armed with the cashier's description and the informant's tip, Officer Hale, at approximately 5:45 p. m., walked to the John Howard Clothing store which was only one block away. There he saw two men "horsing around" and though one of them approximated the cashier's description (bush haircut, etc.), Hale failed to stop him from leaving the store. He testified that he was more interested in talking to the manager and that at that time the defendant was wearing a blue police boys club jacket as opposed to the robber's brown leather jacket.

The manager informed Hale that the person who had just left was known as "Jimmy" and that he had previously passed some bad checks at the store. At this point, the manager called the defendant back. He returned, answered that his name was "Jimmy," that he had passed some bad checks at that store, and that he did have a girlfriend whose name and address corresponded to Hale's information.

At this point the defendant was placed under arrest and subsequently searched. Three twenty-dollar bills were found.

## CONCLUSIONS OF LAW

The questions presented by this case are (1) whether the arresting officer could combine and utilize the totality of the information available to him to provide a basis for a finding of probable cause to arrest and to conduct a lawful search and seizure incident thereto, and,

contingent upon an affirmative answer to the first question, (2) whether the facts of this case, taken in "sum total," constituted probable cause to arrest and make a search incident thereto. The Court finds in the affirmative for both questions and accordingly denies the motion to suppress.

 The broad test of probable cause is whether the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 172, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The validity of the arrest must be determined by its reasonableness in the light of the *circumstances of the particular case. Brinegar,* supra, at page 167, 69 S.Ct. 1302. Mr. Justice Douglas, writing for the Court in Henry v. United States. 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), said that "[p]robable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Our Court of Appeals in Dixon v. United States, 111 U.S.App.D.C. 305, 296 F.2d 427, 428 (1961), further stated that "The decisive factors are that all the circumstances are to be considered together, in a sum total * * *." The standard is one which encompasses the totality of the existing circumstances known to the arresting officer immediately prior to the arrest and upon which the officer makes the arrest without a warrant.

 There seems to be no doubt that an informant's tip, even that of an anonymous informant, may be added as an ingredient to the mix which will later be viewed for a determination as to the existence of probable cause. Mills v. United States, 90 U.S.App.D.C. 365, 196 F.2d 600 (1952); De Bruhl v. United States, 91 U.S.App.D.C. 125, 199 F.2d 175 (1952). In the recent Supreme Court case of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court after reaching a determination that a "reliable" informant's tip met neither of the two-pronged *Aguilar* [1] tests, nevertheless went on to state that "This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support." In short, the Court said that the tip could be considered, but that when linked with an inconclusive investigation, the "sum total" had not been raised from mere suspicion to probable cause. The rationale for such a conjunctive approach was set forth by Judge Burger in Christensen v. United States, 104 U.S.App.D.C. 35, 259 F.2d 192, 193 (1958), where he said, "We cannot view the advance 'tip' information and the observations of the police detective in two separate, logic-tight compartments. Neither one standing alone would constitute probable cause, but together they composed a picture meaningful to a trained, experienced observer."

Here, the "sum total" consisted of information from two separate sources, (a) the undisputed fact of a recent robbery and a description of the robber proffered by the victim-cashier at the Safeway store and (b) an identification tip offered by an anonymous female caller who claimed to speak from personal observation of the robber and gave information in rather specific detail as to the robber's identity.

Scrutinizing the cashier's description which was the result of personal observation under tense circumstances, it is clear that while she erred [2] as to some

---

1. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

2. Imprecise identification is not unusual and is a common occurrence in cases such as these. "Admittedly a crime victim's observation may be faulty in some respects, as it may have been here; however, the mistakes are irrelevant if there is sufficient particularized information

of the defendant's physical characteristics, (reported height of 5'3"–5'5" versus the actual 5'9", "slim build" versus 153, "dark skin" versus brown skin) her description was adequate enough to cause Officer Hale to immediately view the defendant as a potential suspect when confronting him in the store with the manager. The fact that a robbery had recently occurred is not in dispute and the matter of the robber's identity alone remained.

What information did the arresting officer have from the two sources as to the robber's identity? Among other things, Mrs. Brunner, the victim, reported that the robber had a semi-African bush haircut. The unknown female caller reported that a man whom she knew bumped into her as she was entering the Safeway, that he was pointed out as having just robbed the store, that his name was Jimmy, that he had a girlfriend living in the vicinity, that he had passed bad checks at the John Howard store, a block away, and that he was believed to be presently at that store. The officer with this totality of information immediately went to the John Howard store and saw a man with a semi-African bush haircut. The man left the store. The officer asked the store manager if he knew a man named Jimmy who had recently written some bad checks and was told that such person had just walked out of the store. After the store manager walked to the front door and called the man back, the arresting officer questioned him and ascertained that he was named Jimmy, that he had passed bad checks at the John Howard store, and that he had a named girlfriend living nearby. Thus corroborating the details concerning identity supplied by the female caller a few minutes before, the officer thereupon made the arrest. The search incident thereto produced three twenty-dollar bills.

These facts bring this matter within the rationale of *Christensen, De Bruhl,* and *Mills,* supra, which stand for the proposition that an informant's tip may contribute to the development of probable cause. Contee v. United States, 94 U.S.App.D.C. 297, 215 F.2d 324 (1954), relied on by defendant, which holds that an anonymous informant's tip, absent supporting circumstances, will not support a finding of probable cause, is clearly distinguishable on its facts. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964) and *Spinelli,* supra, on the other hand, hold that an "unsubstantiated" informant's tip, accompanied by a factual pattern which if viewed alone would not clearly indicate criminal activity, will not support a finding of probable cause.

Here the informant's tip had unusual elements of credibility. It was made by a telephone call to the actual scene of the robbery only shortly after the robbery itself had occurred. It was based on a claim of personal observation of the alleged suspect running from the scene and contained detailed information of the identity of the suspect and his likely location one block away. Her failure to give her name was wholly understandable. As was said in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958), the officer when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. In addition, the officer, prior to arrest, corroborated the details concerning the identity of the suspect. Acting under the totality of these circumstances, the arresting officer had clear reason to believe that the crime had been committed by the person to be arrested. Davis et al. v. United States, D.C. Cir., 409 F.2d 458 (1969). The arrest was therefore made upon probable cause and the search incident thereto valid.

An order consistent with the foregoing has been entered.

to constitute probable cause. Except in those few cases where cameras are part of a burglar alarm system, most reports are likely to be less than perfect." Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976, 979 (1966).

## ORDER

Upon consideration of defendant's motion to suppress certain evidence and after hearing argument thereon, it is by the Court this 10th day of March, 1969

Ordered that defendant's motion be and the same is hereby denied.