**UNITED STATES of America, Plaintiff,**

v.

**James D. MITCHELL, Defendant.**

**No. 22878.**

United States District Court
W. D. Missouri, W. D.

June 11, 1969.

Calvin K. Hamilton, U. S. Atty., Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Willard B. Bunch, Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

At long last the Congress has granted the United States a right of appeal in all criminal cases from an order granting a motion to suppress evidence. See Section 3731, Title 18, United States Code, as amended by Pub.L. 90–351 in 1968. It is therefore appropriate that the grounds upon which the grant of de-

fendant's motion in this case is based be stated.

## I.

Defendant's motion to suppress is directed (a) to a cardboard box containing shirts allegedly stolen from interstate commerce which were seized from the trunk of defendant's automobile immediately after his arrest, and (b) to certain oral statements elicited from him while still in custody pursuant to that arrest. Defendant is charged with the theft of the shirts in Count I of the indictment and with their illegal possession in Count II; both offenses are charged under Section 659, Title 18, United States Code.

The warrantless arrest upon which the United States relies to authorize the search and subsequent seizure was made by Lieutenant Hulett of the Kansas City Police Department. Whether that search and seizure is lawful is dependent upon the legality of the warrantless arrest. Whether that arrest was lawful is dependent upon whether it was based on probable cause. The factual situation is not in dispute.

Lieutenant Hulett was examined at the close of the pretrial Rule 41(e) hearing for the express purpose of establishing and agreed statement of facts. The United States concedes that the testimony which appears on the eighteen pages of that portion of the transcript appropriately "summarizes all the evidence favorable to probable cause" (Tr. 18). It is therefore undisputed that the only information Lieutenant Hulett had about the defendant or about the particular theft from interstate commerce involved in this case was received as a result of a telephone call to him from an unnamed informant made shortly before he arrested the defendant. He was not engaged in any investigation of the offense charged in the indictment because he had no knowledge that any theft from an interstate shipment had occurred.

Lieutenant Hulett testified that he was advised by his unnamed informant that the defendant would be at a named tavern between 8:30 and 9:00 a. m., on the day of the arrest; that the defendant would be driving a blue 1963 Chrysler; that the defendant was an employee of the D. C. Freight lines; that defendant was between 35 to 40 years old; that the defendant would have some shirts for sale which would be in the car that defendant would be driving; and that the shirts either had been or would have been stolen from the defendant's employer.

Lieutenant Hulett testified that he had no independent knowledge of the particular theft from interstate commerce here involved and that no official report of that particular theft had been made to the Kansas City Police Department. He did however, recall that about a month earlier he had passed on to his superiors another tip from the same unnamed informer that there had been other thefts from the same truck line. He testified, however, that the only information he had ever had about any thefts from the freight line came solely from his unnamed informer and that he never had corroborated any of this information.

Lieutenant Hulett testified that he did not verify whether defendant was in fact an employee of the Time—D. C. Truck Line. He testified that he did not ask nor did he know the source of his unnamed informant's information. And he testified that he did not ask nor did he know whether his informant's knowledge was personal or whether the person or persons who may have given information to his informant had in fact given his informant accurate information.

Lieutenant Hulett testified that he did not know whether any of the information received from his informer was in fact accurate until after he had arrested the defendant and had thereafter made appropriate inquiry and identification. It is clear that he did not know that there were shirts in the box until after the arrest. And it is clear that he did not know at the time of the arrest that the shirts had in fact been stolen from an

interstate shipment. Indeed, he testified that he could not even now so testify of his own personal knowledge and investigation. It is also clear that nothing Lieutenant Hulett saw after he went to the tavern and before he arrested defendant which could be said to support a finding that a prudent man of reasonable caution would have concluded that the defendant had committed or was in the process of committing an offense against the law.

## II.

The testimony heard in this and in other cases involving warrantless arrests strongly suggests that the United States is under the impression that probable cause for a warrantless arrest and a valid subsequent search and seizure may be established by proof that the state or federal arresting officer relied solely upon a tip received from an unnamed informer, provided it is also established that such unnamed informer could be said to be "reliable" in the sense that he had in the past furnished tips against other citizens which turned out to be accurate.

The insistence that the name of the informer be kept secret, of course, makes it quite difficult to ascertain from anyone except the arresting officer himself what information was contained in the tip or the circumstances underlying how the information passed on in the tip had been acquired. Indeed, it is quite apparent that acceptance of the notion that probable cause for a warrantless arrest may be established by an uncorroborated and unsupported tip from an unnamed "reliable" informer would mean that the only protection afforded by the Fourth Amendment is the right to cross-examine the arresting officer in regard to when he received the tip, what was said by the unnamed informer, and whether the arresting officer believed his informer was "reliable." The fact that a particular police officer acted solely upon the word of an unnamed informer makes it unlikely that cross-examination of that police officer is likely to add much to the factual situation surrounding the arrest.

A judicial officer may not lawfully issue a warrant for an arrest or a search on the basis solely of the uncorroborated and unsupported assertion or belief of a police officer. It would seem obvious that neither may a judicial officer lawfully issue a warrant based solely on the testimony of a police officer which would reveal that the only information he had about an alleged crime and a particular defendant's alleged connection with that crime was received from an unnamed informer's tip which was uncorroborated and unsupported by any independent police investigation whatsoever.

We cannot believe that testimony which would not support the issuance of an arrest or a search warrant can nevertheless be said later to support a warrantless arrest. The testimony in this and other cases, however, indicates that particular arresting officers apparently believe that they do not need to obtain a warrant for the arrest or search of a particular citizen if they receive an uncorroborated and unsupported tip from a "reliable" unnamed informer.

In this case, the arresting officer, without even checking to find out whether any crime had even been committed, accepted and acted on the word of the unnamed informer.

Lieutenant Hulett testified that he had received at least three past tips from the same informer in connection with three earlier cases extending back as far as 1965. We stated at the hearing and assume for purposes of this motion that the unnamed informant may be classified as "reliable" within the meaning of the applicable cases. It is our judgment, however, that proof of the reliability of the unnamed informer under the undisputed factual circumstances of this case is not sufficient evidence upon which a finding of probable cause may be based.

The United States Attorney made a suggestion at the hearing that Lieutenant Hulett had more authority to act on the informer's tip in this case because he was so impressed by information he

had received from the same informant in two other cases about a month earlier. Lieutenant Hulett put the same thought this way: "The only thing I can say is that if this individual tells you something, you better move, because he's accurate" (Tr. 9-10). We shall discuss the question of whether data of this sort constitutes probable cause after we state the facts concerning the oral statements.

### III.

The factual situation in regard to the oral statements is also undisputed. Counsel agreed that the defendant gave those oral statements after appropriate *Miranda* warnings were given. It is also agreed, however, that "the statements that would be tendered were given and obtained as an incident of the original custody" (Tr. 15).

In the course of preparing this memorandum we noted in the transcript a colloquy between the First Assistant United States Attorney and Officer Fortner which raised a question in our mind whether, on the facts, there was a possibility that some other oral or written statement may have been made by the defendant under circumstances in which the connection between the arrest and the statement had "become so attenuated as to dissipate the taint," within the meaning of the Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939), as applied in Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We therefore conferred further with counsel in order to make certain that counsels' agreement that all statements, either written or oral, which might be offered were in fact given and obtained as an incident of the original custody.

Counsel made an additional check of the factual situation and thereafter advised the Court that the agreement made at the hearing was consistent with the facts as they knew them to be, counsel for the United States explaining that the government did not intend to offer the written statement referred to in the transcript because that statement did not in any way relate to the pending case. It is therefore apparent that all oral statements which the United States would offer must be considered, on the facts, as having been given as an incident of the arrest.

### IV.

It is not necessary for us to make any extended review of the applicable law. We did so recently in White v. Swenson, 301 F.Supp. 447, W.D.Mo.1969, decided May 2, 1969, in which we dealt with the legality of another arrest made by another Kansas City, Missouri, police officer who relied solely upon an uncorroborated and unsupported tip of an unnamed informer. The unnamed informer there involved, an individual from the underworld known by the arresting officer as a thief of long standing and a drug addict, had been consistently used by that officer over a fifteen year period. In that case, as in this, the arresting officer, without any effort to check the information supplied by the informer, proceeded immediately to arrest the defendant and to search his home as an incident of that arrest. We held the search to be invalid because we found that the arrest had been made without probable cause. We adopt here by this reference what we said there.

In light of the United States' vigorous effort to sustain the arrest procedure followed in this case it is not inappropriate to add a word to what we said in White v. Swenson, *supra*, in answer to particular arguments made by the United States in this case. The point of beginning, we believe, is to recognize at the outset, as we believe Mr. Justice White appropriately recognized in his concurring opinion in Spinelli v. United States, 393 U.S. 410, 427, 89 S.Ct. 584, 595, 21 L.Ed.2d 637 (1969), that there is "tension between *Draper* [358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)] and the *Nathanson* [Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933)]—*Aguilar* [Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d

723 (1964)] line of cases." We agree with Mr. Justice White that the majority opinion in *Spinelli* must be read as "while seemingly embracing *Draper*, [it] confines that case to its own facts" (393 U.S. at 429, 89 S.Ct. at 595). Whether the relatively short line of *Draper* cases or the familiar long line of *Nathanson-Aguilar* cases will withstand the "full-scale reconsideration" implicitly suggested by Mr. Justice White's concurring opinion in *Spinelli* is not an appropriate question for this Court to attempt to answer.

So far as *Draper* is concerned, this case must be distinguished on its undisputed facts. Unlike this case, *Draper* involved a named informer who supplied information to an officer working on the particular case in such detail that a magistrate "could reasonably infer that the informant had gained his information in a reliable way" (393 U.S. at 417, 89 S.Ct. at 593). The informant in *Draper*, of course, was known. In this case, the facts establish that such an inference may not be made in the face of the arresting officer's positive testimony that he did not know nor did he inquire how or whether his informer had in fact gained his information in a reliable way. Certainly, the descriptions furnished of the two defendants involved in the two cases were entirely different.

Mr. Justice Harlan took particular note in *Spinelli* of the fact that in *Draper*, "independent police work * * corroborated much more than one small detail that had been provided by the informant" (393 U.S. at 417, 89 S.Ct. at 594). The undisputed factual circumstances of this case establish that the arresting officer did not attempt to corroborate any of the details of the information received in the tip, other than to arrest a man who apparently fitted the exceedingly broad and general description furnished. It cannot be ignored that in this case Lieutenant Hulett, as stated by Judge Matthes in Pigg v. United States, (8th Cir. 1964) 337 F.2d 302, 305, "was wholly ignorant of the theft from interstate shipment, * * * was

not engaged in investigating the offense, * * * [and] [t]he contents of the box did not become known to the officer until sometime after the arrest."

Assuming, therefore, that *Draper* survived *Spinelli* with some yet to be defined vitality, we are required to distinguish this case from *Draper* on its facts for the reasons stated. We therefore find and determine that the principles articulated in the *Nathanson-Aguilar-Spinelli* line of cases must be applied to the undisputed factual situation presented in this case.

## V.

We discuss first the emphasis the United States attempts to place on the testimony concerning the freshness of the data concerning the reliability of the unnamed informer. We made clear at the Rule 41(e) hearing that we accepted Lieutenant Hulett's testimony that he believed his informer was reliable. We are equally convinced that Lieutenant Hulett acted in good faith in full accordance with procedures apparently approved by the department. But, as pointed out in Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L. Ed.2d 134 (1959), "good faith on the part of the arresting officers is not enough." That case, involving a violation of the same statute here involved, Section 659, Title 18, United States Code, pointed out that it can not be said that probable cause for a warrantless arrest exists unless "the police * * * have reasonable grounds to believe that the *particular package* was contraband." Lieutenant Hulett did not have such knowledge under the undisputed facts of this case.

Mr. Justice White's concurring opinion in *Spinelli* points out why an uncorroborated and unsupported informer's tip may not, standing alone, be said to support a finding of probable cause. He first stated that "the unsupported assertion or belief of the officer does not satisfy the requirement of probable cause." He then pointed out that if the unsupported belief of a police officer

known "to be honest and experienced * * * is unacceptable, it would be quixotic if a similar statement from an honest informant were found to furnish probable cause." Mr. Justice White therefore stated that it should be apparent that "the past reliability of the informant can no more furnish probable cause for believing his current report than can previous experience with the officer himself."

■■ The insistence of the United States that Lieutenant Hulett's unnamed informer had given accurate information in the recent past goes only to the question of whether that unnamed person, whomever he may be, may be said to be "reliable." A factual determination, however, in favor of an unnamed informant's reliability does not mean that a police officer has probable cause to arrest someone on that informer's uncorroborated tip. The test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964), as further explicated in *Spinelli*, is a two-pronged test. As Judge Lay recently pointed out in the post-*Spinelli* case of McCreary v. Sigler, (8th Cir. 1969) 406 F.2d 1264, 1269, the "reliability of the informant is not by itself sufficient to establish probable cause to search *without further underlying circumstances being shown as to how the informant came by his information.*" (Emphasis ours).

Judge Lay relied both upon *Spinelli* and United States v. Roth, (7th Cir. 1967) 391 F.2d 507, in support of his statement of the applicable principle. Footnote 4 on page 510 of 391 F.2d reporting *Roth*, shows that the FBI agent involved in that Section 659 case placed the same sort of total reliance upon the tip of an unnamed informant as did Lieutenant Hulett in this case. The factual situation presented in this case, and that presented in *Roth* show that the arresting officers were not in the least concerned about where or how their unnamed informers may have acquired their information. Neither officer knew and neither inquired about his unnamed

informer's source of information. Both officers erroneously assumed that if his unnamed informer had supplied accurate information in the past, such informer could be considered "reliable" and that therefore the arresting officer had probable cause to make the arrest recommended in the informer's tip.

In *Roth*, the affidavit in support of the warrant stated that the unnamed informer had "in the past furnished the affiant with reliable and accurate information and he knows the informant to be a reliable source." The state court judge who issued the warrant and the federal district judge who tried the Section 659 charge believed that probable cause was established by that recitation.

Judge Swygert's reversal of the conviction on the ground the district court erred in refusing to suppress the evidence obtained under the warrant anticipated *Spinelli's* application of *Aguilar*. In his opinion in *Roth,* Judge Swygert stated that the statement in the affidavit was "too barren either to credit or to corroborate the hearsay statements of the informant." He pointed out the obvious fact that "irrespective of the informant's reliability, he in turn may have received his information from someone wholly unreliable." See also United States v. Davis, (7th Cir. 1968) 402 F.2d 171, for another case which applied *Aguilar* in the same manner as the Supreme Court later applied that case in *Spinelli*. The conviction was reversed in that case because the application for the search warrant had failed to state "in what manner his informant received the information transmitted, whether by personal observation or through some other individual."

## VI.

■ Application of long standing Fourth Amendment principles to the undisputed facts of this case cannot fairly be said to be equivalent to placing handcuffs on the police. Henry v. United States, *supra*, pointed out that "the requirement of probable cause has roots

that are deep in our history" and that from the time of the adoption of the Fourth Amendment, and even before, "an arrest is not justified by what the subsequent search discloses." The constitutional requirement of probable cause simply means that "under our system suspicion is not enough for an officer to lay hands on a citizen."

 This case, as many cases before it, simply holds that a police officer does not have probable cause to make a warrantless arrest when the only information the arresting officer has about the commission of a crime and the person who may have committed it is an uncorroborated and unsupported tip from an unnamed informer. The law does not permit a police officer to lay hands on a citizen on the basis of such meager information. That does not mean, of course, that the police officer should disregard the tip. Indeed, he is under duty to make an appropriate investigation to determine whether the information furnished is accurate.

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), points out that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" (392 U.S. at 22, 88 S.Ct. at 1880). Mr. Justice White's concurring opinion in *Terry* makes the same point in a little different language. He stated that "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." He added: "Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." See also Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676, decided April 22, 1969, in which the "settled principle" that "the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes" was reiterated.

The plain fact about the matter is that Officer Hulett acted too quickly in this case, just as Officer Ubben acted too quickly in Pigg v. United States, *supra*. The arresting officer in *Pigg* had grounds for suspecting the defendant there involved which were in a sense greater than Officer Hulett had in this case.

In *Pigg* the arresting officer actually knew the defendant as a "noted thief." So far as the testimony in this case is concerned, defendant has no record at all. When the arresting officer in *Pigg* asked the defendant where he got the box involved in that case (which later turned out to have been stolen from interstate commerce) the defendant told him that he had found it. Officer Ubben said: "I bet you stole it." The defendant replied: "I wouldn't doubt it."

Judge Matthes held that the defendant's statement could not be viewed as a direct admission and that while under all the circumstances it could be said that the arresting officer had good cause for suspecting the defendant, it could not be said that the arresting officer had sufficient information to constitute probable cause for a warrantless arrest.

United States v. Canty, D.C.D.C.1969, 297 F.Supp. 853, illustrates what a police officer should do when he gets a tip from an unknown informant under circumstances which prevent the officer from knowing the source or the reliability of the informant's information. Officer Hale, the police officer involved in *Canty,* unlike Officer Ubben in *Pigg,* and unlike Lieutenant Hulett in this case, waited until after he independently corroborated the information received from the informant and then he made his arrest. The warrantless arrest and the subsequent search and seizure made in *Canty* were accordingly both held to be lawful.

## VII.

Under the undisputed facts presented we find and determine that Lieutenant Hulett did not have probable cause to arrest the defendant without a warrant;

that the arrest was therefore legally invalid; and that all evidence obtained as a result of the subsequent search and seizure must be suppressed. Relief must be granted not only in regard to the box of shirts seized and searched immediately after the arrest but also in regard to the oral statements made by the defendant which, under the undisputed facts, must be considered as an incident of Lieutenant Hulett's arrest. Two recent cases in which the earlier applicable cases are cited and applied establish that oral or written statements obtained under the circumstances here presented must also be suppressed. See People v. Johnson, 75 Cal.Rptr. 401, 450 P.2d 865, decided March 3, 1969, by the Supreme Court of California, and United States v. Small, D.Mass.1969, 297 F.Supp. 582. Those cases apply the principles stated in *Wong Sun* and hold that statements which are incident to an unlawful arrest are the "fruit" of official illegality and must accordingly be suppressed.

The California case appropriately points out that the giving of a *Miranda* warning does not remove the taint of the prior illegal arrest for the reason that such a warning does not advise a defendant that the evidence with which he was confronted was not lawfully obtained or that such evidence would not be admissible at trial. Compare Davis v. Mississippi, *supra*.

For the reasons stated, defendant's motion should be granted. It is therefore

Ordered that defendant's motion to suppress should be and is hereby granted. It is further

Ordered that this case is set for trial for Monday, June 23, 1969. It is further

Ordered that should the United States Attorney file a notice of appeal pursuant to Section 3731, Title 18, United States Code, and make the appropriate certificate in connection therewith, this case will be removed from the trial docket until after the appeal is finally determined.