**Algie Ray GRIMES et al., Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–73–425.**

Court of Criminal Appeals of Oklahoma.

Nov. 27, 1974.

Rehearings Denied Dec. 19, 1974.

Thomas G. Hanlon, Tulsa, for appellants Grimes, Marlow and Marlow.

Andrew T. Dalton, Jr., Tulsa, for appellant Edmondson.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellants, Algie Ray Grimes, Earnest L. Edmondson, Tommy Jordan Marlow, and Patricia Ann Fairchild Marlow, hereinafter referred to as defendants, were charged with the offense of Possession of a Controlled Substance, Marijuana, with the Intent to Distribute, in the District Court, Custer County, Case No. CRF–73–12. The four defendants were convicted by a jury, and defendants Grimes, Edmondson, and Tommy Jordan Marlow were sentenced After Former Conviction of a Felony, to eighteen (18) years imprisonment. Defendant Patricia Ann Fairchild Marlow was sentenced to two (2) years imprisonment. From these judgments and sentence the four defendants appeal to this Court.

The testimony at trial developed the following facts. On approximately the 30th day of January, 1973, Patricia Marlow, Tommy Marlow, and Earnest Edmondson traveled by car toward California where defendants Patricia Marlow and Tommy Marlow planned to be married. The three

spent the first night in Tucumcari, New Mexico and the next morning were met there by Algie Grimes. The four proceeded to California and after the Marlows were denied marriage ceremony in Winterhaven, California, the foursome traveled on to El Centro, California. There they spent the 2nd, 3rd, and 4th of February, 1973, at the Travelodge Motel in adjoining rooms, both registered in the name of Larry Jordan. While at this motel, two calls were made to Old Mexico. On the 2nd day of February, the four drove to Old Mexico, where the Marlows were married. Subsequently, they returned to the Travelodge in El Centro, California, and then traveled back to Old Mexico. On February 4, 1973, at approximately 10:00 a. m., two cars passed through customs at Entrade, California. A customs officer testified that the first car, a 1967 Chevrolet, was driven by Mr. Edmondson and contained the Marlows. The occupants volunteered that the following car was traveling with them and that they had that driver's luggage. The second car was a 1966 Ford, driven by defendant Grimes. The trunk of that car was completely empty, and Grimes indicated that he was traveling with the people in the Chevrolet. Through a cooperative effort between the Oklahoma State Bureau of Investigation, the Yuma, Arizona Narcotic Task Force, and an anonymous informant, the Oklahoma officers were informed of the defendants' activities. On the 5th day of February, 1973, search warrants were issued on the basis of information communicated to Narcotics Agent Sid Cookerly by narcotic authorities in Arizona. On the 6th day of February, 1973, both cars were stopped and search warrants presented to defendant Grimes, driver of the Ford, now the lead car, and defendant Edmondson, driver of the Chevrolet, the second car. Upon search of the Ford, approximately 200 to 250 pounds of marijuana were discovered and became the basis of these convictions.

The defendant's first proposition questions the validity of the affidavit offered as a basis for the two search warrants used to discover the illegal marijuana in question. On the 1st day of July, 1974, this Court entered an Order for an evidentiary hearing, which provides in pertinent part:

"* * * In light of all the facts and attendant circumstances in the record before us, we are of the opinion under the exigencies existing at the time the Oklahoma officers received communications from the Arizona authorities [the affiant was an Oklahoma officer who acquired his information from the authorities in Yuma, Arizona, part of whose information in turn came from an anonymous informant], it was not possible to file a proper affidavit for search warrant in Oklahoma to meet the constitutional standards set forth by the United States Supreme Court and adopted by this Court, nor indeed was it necessary, under the rules set forth in Chambers v. Maroney, 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975, which recognizes that warrantless searches may be conducted when probable cause exists in the mind of the officer initiating the police communications for the search of a vehicle based upon facts and information sufficient to establish said probable cause.

A similar situation to the case at bar existed in Whitely [Whiteley] v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 28 L.Ed.[2d] 306, 91 S.Ct. 1031 (1971), wherein it was recognized that a warrantless search of a motor vehicle containing contraband could be made by an officer receiving communications from an initiating official who possessed probable cause based upon facts communicated to him and derived from other sources. This principle has long been recognized under the Fourth Amendment of the Constitution, and the power to conduct such warrantless searches are derived therefrom from the federal authority subject to the guidelines of Chambers v. Maroney and Whitely

[Whiteley] v. Wyoming State Penitentiary, supra.

The provision of our Constitution relating to search and seizure is couched in the identical language as that of the Fourth Amendment. In light of the protective restrictions preventing warrantless searches of motor vehicles upon mere suspicions under the rules and guidelines enunciated in Chambers and Whitely [Whiteley], we are of the opinion that independent of the validity or invalidity of the affidavit for search warrant, it will be necessary to conduct an evidentiary hearing in the District Court, Custer County, Case No. CRF–73–12, and the Chief Judge of the District Court, Custer County is directed to enter an Order assigning a Judge, other than the trial judge in this case, to conduct such evidentiary hearing. The burden of establishing probable cause in the mind of the initiating officer, is upon the State of Oklahoma, and they may, at their election, proceed under the provisions of 22 O.S. § 723, to apply to the Judge to whom such hearing is assigned, for "certification and payment of such out-of-state witnesses. The Judge so assigned, shall set a date for the evidentiary hearing, within a reasonable time, and the Appellants, if incarcerated, shall be returned from the place of incarceration, if not on bond, a sufficient length of time prior to the date set for hearing, where they may confer with the attorney who represents them on appeal. Any Appellant who is on bond, shall be notified of said hearing by mailing notice of said hearing to his address, if known, in addition to notifying his attorney of record. The hearing shall be transcribed and either party may offer such evidence as relates to the issue before the Court. At the conclusion of the hearing, and following the guidelines of Chambers and Whitely [Whiteley], the Court shall enter Findings of Fact and Conclusions of Law and certify the same to this Court to supplement the record filed in the above styled and numbered cause. The cost of such transcript shall be borne by the Appellants, unless they are indigent, in which event, upon a proper showing of indigency, the Court may order a transcript to be provided from the funds authorized by law.

In the event that the prosecuting authorities do not elect to produce evidence relating to the probable cause under the guidelines heretofore referred to, they shall so advise the assigned Judge, and the Presiding Judge of this Court, within a reasonable time. The failure to produce such evidence and conduct such hearing, within a reasonable time, meeting the federal guidelines, will be considered by this Court as a confession of error.

In the event the hearing is conducted, the record, together with Findings of Fact and Conclusions of Law, shall be certified to this Court, as above set forth, and the Appellants shall be returned to their place of incarceration at the conclusion of said hearing, pending a determination of this appeal.

\* \* \*"

Such evidentiary hearing was conducted on the 14th day of August, 1974, after notice to the defendants and their attorneys. Two of the defendants failed to appear, one Tommy Jordan Marlow, having escaped from the Penitentiary at Stringtown, but his attorney was present, and Patricia Ann Fairchild Marlow, being unable to attend because she was hospitalized, but her attorney was present, and the Court conducted an evidentiary hearing. Prior to the evidentiary hearing a request was made for the disclosure and attendance of the informants, which was denied by the Court. The evidentiary hearing was transcribed and filed with this Court, together with the Judge's Findings of Fact and Conclusions of Law.

After an examination of the transcript of testimony offered, and the author-

ities, we commend the Honorable George Howard Wilson, the District Judge who presided over the evidentiary hearing, and adopt his Conclusions of Law, as determinative of the issue herein presented, which are set forth as follows, in pertinent part:

". . . [T]he Oklahoma Court of Criminal Appeals . . . directed the District Court of Custer County to hold a hearing to determine facts and conclusions of law using the guidelines set forth in the United States Supreme Court Cases, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Whitely [Whiteley] v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), which recognize that warrantless searches may be conducted when probable cause exists in the mind of the officer initiating the communications for the search of a vehicle based upon facts and information sufficient to establish probable cause. The aforesaid cases dictate the following questions be answered:

1. From the facts in the instant case, who is the officer initiating the communications which led to the search of the vehicle?

2. Were the facts and circumstances within the mind of the initiating officer sufficient to establish probable cause?

At such an evidentiary hearing (after the trial and appeal of the case) it is not deemed necessary or appropriate to require and compel the State to produce for examination any or all confidential informants or to cause their identity to be revealed. Such revelation is not deemed either relevant or essential to a fair determination of the issue of probable cause. It is further deemed appropriate and sufficient to deal with—as was done in the case at bar—by thorough examination of the officers in Arizona who communicated to the affiant in Oklahoma and who dealt with and relied upon the confidential informants. [See Appendix 1] Accordingly such an application filed by defendant Edmondson (and joined in by defendant Grimes) two days before the Evidentiary Hearing was denied.

A review of the evidence reveals that Agent Wheeler was a 'focal point' for information during the investigation period in Arizona which led to the search of the vehicles in Oklahoma inasmuch as Agent Wheeler had received information from a confidential informant, the American National, and comparable information gained by Agent Land from a confidential informant, the American National. Mr. Wheeler also obtained additional information from Sid Cookerly of the Oklahoma Bureau of Investigation and James Evans, the customs agent at Andrade, California. Based upon the numerous communications and the information gathered from these sources and his personal knowledge of the Molena family's drug activities [See Appendix 2], Mr. Wheeler specifically requested that Mr. Cookerly apprehend the suspect vehicles and conduct a search; and because of these facts Agent Wheeler was the initiating officer.

"The United States Supreme Court in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), has defined probable cause in the following terms:

'Probable cause for an arrest exists where the facts and circumstances within an arresting officers knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.'

"While dealing with the element of probable cause, the Court devised a two pronged test in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to insure the trustworthiness

of an officer's information; such test being that (1) information must be given to establish the reliability of an informant, and (2) information must be given to establish that the informant's information was reliable. The Court further stated that the test for probable cause used to determine the legality of a search is the same as is used to determine the legality of an arrest.

"The United States Supreme Court while discussing *Draper*, supra, in *Spinelli*, supra, also provided for alternative methods of insuring the trustworthiness of an informant's information. Referring to *Draper*, the Court said:

> 'Independent police work in that case corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established.' Spinelli v. United States, 393 U.S. 410 Pp. 417–418 [89 S.Ct. 584, 21 L.Ed.2d 637].

"This passage illustrates that an informant's trustworthiness could be established if his information is sufficiently corroborated by independent circumstances within the officer's knowledge. This rule has been reiterated in United States v. De La Cruz Bellinger, 422 F.2d 723 (1970), cert. denied [398 U.S. 942, 90 S. Ct. 1860, 26 L.Ed.2d 278] June 1, 1970, where the Court said:

> '. . . Serna (informant) gave the customs agents a description of the appellant, a description of the contra-band, and its location in the abandoned automobile. The information was subsequently corroborated by external circumstances within the officers' knowledge when the kidnapped customs agent returned and the abandoned automobile and contraband were found. From this corroboration, all of which occurred prior to arrest, the officers could reasonably conclude that Serna was reliable . . .'

"Other jurisdictions have reached the same conclusion. In United States v. Altizer [D.C.], 308 F.Supp. 376 (1970), the Court said,

> '. . . The informer, was proved credible when the officer visited the tavern and saw a man fitting the informer's description . . .'

"See also United States v. Drew [5 Cir.], 436 F.2d 529 (1970), United States v. Pitt [4 Cir.], 382 F.2d 322 (1967), and United States v. Canty [D.C.], 297 F. Supp. 853 (1969).

"In the present case, at bar, Agent Wheeler's informant gave Mr. Wheeler sufficient underlying circumstances for Mr. Wheeler to reasonably conclude that his informant's information was reliable because the informant obtained his information directly from Lucie Molena, a member of the Molena Family. Although the past credibility of his informant was not established, the alternative method for insuring the trustworthiness of an informant provided for in *Spinelli*, supra and *Draper*, supra, was satisfied by additional independent and external circumstances in that, (1) comparable information was conveyed to Mr. Wheeler by Agent Land, (2) Mr. Wheeler had previous personal knowledge of the fact that the Molena family were known traffickers in drugs, (3) the communications with Agent Cookerly which verified the informant's information, and (4) the information that Mr. Wheeler received from James Evans, the customs agent,

after the vehicles had entered the United States. From this corroboration, all of which occurred prior to Mr. Wheeler's requesting that the vehicles be stopped and searched, Mr. Wheeler could reasonably conclude that the information supplied by his informant was trustworthy. *Spinelli,* supra, *Draper,* supra.

"In determining whether there were sufficient facts and circumstances to establish probable cause, the Court must examine the 'sum total' of information existing in the mind of Mr. Wheeler. United States v. Canty [D.C.], 297 F. Supp. 853 (1969). The facts and circumstances upon which Mr. Wheeler relied in requesting that the vehicles be stopped and searched were, (1) the fact that he had personal knowledge of the Molena family as being narcotics traffickers, (2) the information Mr. Wheeler received from his confidential informant (who revealed the source of his information) and who told him that the defendants had purchased marijuana from the Molena family, and who accurately described the defendants' vehicles which they were operating, (3) the information Mr. Wheeler received from Mr. Land gained by his informant, the Mexican National, which corroborated the information that Mr. Wheeler rereceived from his informant, the American National, (4) the information Mr. Wheeler received from Sid Cookerly as to the existence of Tommy Marlow, the vehicle he drove and his absence from the State of Oklahoma, (5) the information gained by Mr. Wheeler from James Evans, the customs agent, pertaining to the fact that the individuals and vehicles described had entered the United States at Andrade, California, that the four Americans stated that they were traveling together, and that all their luggage was in the one vehicle, while the trunk of the other vehicle was empty, and (6) the additional information Mr. Wheeler received from his informant that if the suspects entered the United States at the Andrade crossing, they would proceed to the Gordon Wells area to pick up the marijuana. [See Appendix 3].

"In conclusion, by the statement of facts and conclusions of law the Court must and does find that Agent Wheeler was the officer initiating the communication and further that the facts and circumstances existing within Agent Wheeler's mind were sufficient to establish probable cause. Further a fair and common-sense determination of the issues is that probable cause was shown as to the co-defendants. The State "has successfully met its burden of establishing by evidence independent of, or extraneous to, that contained in the affidavit for Search Warrant, that probable cause existed in the mind of the initiating officer, that the automobiles contained articles that the law enforcement officers were entitled to seize. . . ."

 Defendants secondly complain of error committed by the trial court in denying defense counsel's motions; (1) to withdraw with respect to defendant Grimes, (2) to sever defendant Grimes from defendants Marlow, Marlow, and Edmondson and, (3) for a twenty-four hour continuance to apply to this Court for Writ of Prohibition. We hold that none of these motions were timely or proper. These three motions were prompted by the same reason. Defense counsel contended that since defendant Grimes was found driving the car wherein the marijuana was found, that he would encounter a conflict in representing both Grimes and the other three defendants who were found in a separate car in which no contraband was found. The first motion, to withdraw as counsel for Grimes, was received by the court one day before trial. The fact situation should have been sufficiently clear from the time defense counsel became involved in the case to have determined at

that time whether or not a conflict of interest would develop. The motion to withdraw was, therefore, not timely made.

After the motion to withdraw failed, a motion to sever was entered for the same reason. Again, the necessity or advisability of severing these cases should have been apparent from circumstances surrounding the initial arrest. Further, a severance is within the trial court's discretion and without a showing of prejudice, the Court of Criminal Appeals will not reverse the trial court's decision as to this matter. See Curcie v. State, Okl.Cr., 496 P.2d 387 (1972). Only defendant Patricia Marlow testified in this case, and her testimony in no way prejudiced any of the other defendants. In addition, there was not an offer of what prejudice might develop during a joint trial. Therefore, we hold that the trial judge did not abuse his discretion in denying the motion for severance.

▮▮ Defendants' third proposition alleges error in overruling defendants' Demurrer and Motion for Directed Verdict. Defendants urge that the evidence did not support the conviction. More specifically, counsel argues that since no illegal marijuana was found in the second car, no possession could be established, thereby failing to prove one of the essential elements of the crime. However, possession may be proved by circumstantial evidence as held by this Court in Brown v. State, Okl.Cr., 481 P.2d 475, when the proof excludes every other reasonable hypothesis. In our present case, evidence linking all defendants with the illegal marijuana was presented by showing the relationship of the four defendants during the six days from their departure from Oklahoma, their trip to California, Mexico, and return to Oklahoma. The interpretation of these facts is within the exclusive province of the jury and we hold that there was sufficient evidence for the jury to have found the defendants guilty as charged.

▮ Finally, defendants allege error in refusing to use the instructions properly and timely requested by defense counsel. Upon review of the instructions, we hold that the instructions given covered all the applicable law and that there was no error in refusing the additional instructions requested by defense counsel.

Because of the Conclusions of Law reached by Judge George Howard Wilson after the evidentiary hearing was held, and after having dealt with all other propositions, as set forth above, and finding nothing which would require modification or reversal, the judgments and sentences appealed from are hereby affirmed.

BLISS, P. J., concurs,

BRETT, J., specially concurs.

## APPENDICES

Appendix 1. : From the Findings of Fact of Judge George Howard Wilson, we quote the following, as to the *Informants*:

"The *First Witness: John Lund*, a special agent for the U.S. Drug Enforcement Administration who testified that on February 3, 1973, by telephone he was contacted at his home in Arizona by a confidential informant, a Mexican National, who lives in Arizona and (who was identified not only by his voice but also by his code name) who told him that there were three white male Americans whom he described as being from Oklahoma, and as slender and termed 'cowboys,' (and as 'Gringos') and a white female, whom he described as blonde-headed; all four of whom were then in San Luis, Mexico, at the residence of Mary Ann Lucie Molena, a known narcotics trafficker. . . . That the informant described the two cars, as a maroon 1966 or 1967 Chevrolet bearing Oklahoma License Plate NW–3955 and

as a greenish color 1966 Ford bearing Oklahoma License Plate SY–8313. Agent Land testified that the confidential informant, prior to February 3, 1973, had given him information on approximately thirty cases, all involving the traffic of narcotics, and some of such cases being described in detail, and that all of these persons were arrested and later finally convicted; and the informant had never given bad information; and the informant's tips had never proven to be unreliable. Further the informant had never been charged or convicted of any offense."

\* \* \* \* \* \*

"The *second witness* called by the State, *Larry Wheeler,* a narcotic agent with the Yuma County Narcotics Task Force, testified that on February 3, 1973, he received information from a confidential informant who had been arrested that day and had been in custody a few hours on a charge of possession of marijuana for sale. The informant (A United States National Citizen) told him that Tommy Jordan Marlow from Muskogee, Oklahoma, along with a white female, who he described as a big, blonde-headed girl named Patty Ann, and two other unidentified men had purchased 200 pounds of marijuana from Mary Molena of the Molena family. (Tc. p. 78, 79). Agent Wheeler stated the informant also described two cars; one being a red 1967 Chevrolet and the other a faded blue 1966 Ford, both bearing Oklahoma plates (but he did not know the tag numbers).

"Mr. Wheeler testified (Tc. p. 79) that his confidential informant revealed to him the source of his information, it being Lucie Molena, the sister of Mary Molena. 'Lucie Molena had told him about the deal that the other people were doing' and 'He told me that Lucie had told him that Tommy and the girl and the two other guys that they had bought 200 pounds of marijuana from Mary.'

'The Informant said that Lucie was there when the deal was made . . . .' Agent Wheeler's confidential informant also passed along the information he received directly from Lucie Molena that the subjects Patty Ann and Tommy Marlow planned to get married, and after they did get married they would leave and get the marijuana delivered to them. That the names of the 'two other guys' were not mentioned. Agent Wheeler admitted that although the informant (who had a long rap sheet record of convictions) and who supplied him with the information was never previously used by him, he considered his information reliable since the informant was in custody and thus there would be no motive for his fabricating a story. Agent Wheeler testified that the information given him by the confidential informant matched the information given to him by Agent John Land . . . ."

Appendix 2: From the Findings of Fact of Judge George Howard Wilson, we quote the following, as to the *Molena family's drug activities*:

"Agent Land told the Court of the members of the Molena family: Father and mother are Ramon Molena and Rosa Molena 'and they are the heads of the Mary Molena family'; one daughter is Lucielle and a daughter Mary (who is a federal fugitive for smuggling marijuana and who has been convicted in Federal Court of conspiracy to smuggle marijuana in the U.S.); a sister-in-law Manuala Molena (who had been arrested); then a Ramon Molena, a brother of Mary and Lucielle (and he had been arrested previously). 'The family is well known in the San Luis area as narcotic traffickers.'

\* \* \* \* \* \*

". . . Agent Wheeler further testified to having personal knowledge of the members of the Molena family (reside just off 17th Street) and the fact

that they are large dealers in marijuana, amphetamines, and other drugs in San Luis."

Appendix 3: From the Findings of Fact of Judge George Howard Wilson, we quote the following, as to the *Gordon Wells* area:

"In his testimony Mr. Land described methods used in smuggling narcotics across the border, in particular, the mothod which employs 'mules,' mules being Mexican Nationals who carry on their backs an amount of marijuana contraband in a sack across the Colorado River at designated meeting points into the United States where it is generally placed into the trunk of an automobile . . . ."

" . . . After an unsuccessful attempt by Agents Land and Wheeler at locating the two vehicles Agent Wheeler again talked with his confidential informant who told him that if they came out at the area of Andrade, California, they would go to what is classified as the Gordon Wells area and pick up the marijuana. (Tc. p. 87)."

BRETT, Judge (concurs specially):

After a careful examination of the trial record, the evidentiary hearing, Findings of Fact and Conclusions of Law, I concur. However, I believe it should be distinguished from this Court's decision in Brown v. State, Okl.Cr., 481 P.2d 475 (1971), and other decisions of this Court in this same area.

Initially, the fact that no marijuana was found in the second automobile caused me considerable concern, considering Brown v. State, supra, and other decisions of this Court, until I realized that the persons in the second car were originally charged as conspirators; and in the amended information they were charged with Algie Ray Grimes, "while acting in concert each with the other," for the crime of Unlawful Possession of a Controlled Dangerous Substance With Intent to Distribute. In substance, the persons in the second car were charged as "aiding and abetting" in the commission of the offense. The rationale of the charge lies in the fact that nothing but the marijuana was contained in the first car, whereas the luggage, and other items belonging to Algie Ray Grimes, were being transported in the second car. Title 21, O.S.1971, § 172, provides the following:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, *or aid and abet in its commission,* though not present, are principals." [Emphasis added].

Hence, the question is presented, with reference to the three persons in the second car: "Were those persons aiding and abetting Algie Ray Grimes in his possession of the marijuana found in his automobile?" I finally concluded that they were. An analogous situation might be: Assuming that "A" and "B" both own automobiles. "A" decides to move a bale of hay from one point to another, but he cannot get it into the trunk of his automobile because the spare tire takes up too much space. "B" offers to put the spare tire in his car in order that "A" can get the bale of hay into the trunk of his car. Clearly, "B" is aiding "A" to take possession and transport the bale of hay to the new location. As I view the instant matter, the three persons in the second car were likewise aiding and abetting Algie Ray Grimes in transporting the marijuana in the first car.

Whether or not the three persons had knowledge that Algie Ray Grimes had marijuana in his car, and whether or not they knew that he intended to illegally dis-

tribute it, were questions of fact for the jury to determine after considering all the evidence and testimony offered at the trial. The jury found answers to these two questions adversely to all four defendants; and I believe the evidence supports that verdict. The only defendant who testified was Patricia Ann Fairchild Marlow. She denied knowing anything about the marijuana. I believe it is quite possible she was telling the truth, but nonetheless the jury convicted all four defendants.

Therefore, I conclude that notwithstanding the fact that the three occupants in the second automobile did not have actual possession, dominion, and control over the marijuana found in the first car, the evidence was sufficient to show them to be aiders and abettors to the commission of the crime.