Dwayne R. WEBB, Appellee,

v.

STATE of Oklahoma, ex rel.
DEPARTMENT OF PUBLIC
SAFETY, Appellant.

No. 80083.

Court of Appeals of Oklahoma,
Division No. 3.

Oct. 20, 1992.

As Corrected Oct. 21, 1992.

Certiorari Denied Feb. 3, 1993.

Michael O'Brien, Dept. of Public Safety,
Oklahoma City, for appellant.

Joe Farnan, Purcell, for appellee.

## MEMORANDUM OPINION

BAILEY, Presiding Judge:

Appellant, State of Oklahoma, ex rel. Department of Public Safety (DPS), seeks review of the Trial Court's order vacating DPS's order revoking the driver's license of Appellee, Dwayne R. Webb (Webb), by which the Trial Court determined the order of revocation, based on "untrue and obsolete" implied consent warnings given to Webb by the arresting officer, to be "unfair and unconstitutional." In this appeal, DPS asserts (1) misapplication of law by the Trial Court, (2) adequate evidentiary support for the order of revocation, and (3) failure of Webb to raise his constitutional challenge in a timely and specific manner.

At trial, Webb stipulated:

- That a Purcell police officer arrested Webb for driving under the influence of intoxicating liquor;
- That the officer had reasonable grounds to believe that Webb was driving a motor vehicle under the influence of intoxicating liquor;
- That the officer informed Webb of his rights, obligations and liabilities under Oklahoma implied consent law arising from submission to/refusal of chemical testing for blood alcohol;
- That the officer requested and Webb consented to a blood test for such purpose; and
- That a duly qualified chemist for the Oklahoma State Bureau of Investigation (OSBI) performed a proper analysis of the blood sample obtained, revealing a test result in excess of .10 gr./210 liters.

The sole issue submitted to the Trial Court for resolution thus concerned effect of the implied consent advisory given by the arresting officer to Webb, informing Webb (1) that the test would be given at no cost to him, and (2) that Webb had no right to consult with an attorney before making a decision to submit or refuse to submit to testing.

Upon the stipulations of Webb, and presentation of evidence by the parties, the Trial Court vacated the order of revocation concluding as a matter of law:

8. That the chemical test advisory/implied consent request given herein is in conflict with 20 O.S. [1991] § 1313.2 which requires the Court Clerk to collect $150.00 in each case in which forensic service is performed by the OSBI if a Defendant is convicted of any offense in the case other than a parking or standing violation, i.e., even if a person's driving under the influence of intoxicating liquor charge resulted in a conviction for speeding or driving left of center, this assessment would have to be collected. That this statute does not make an exception for forensic service provided on implied consent blood samples.

9. 47 O.S. [1991] § 756 in pertinent part states, "Evidence that the person has refused to submit to either of said analyses is also admissible." That these implied consent cases, while civil matters, are quasi criminal in that the licensee has to be under arrest for a criminal offense (Driving Under the Influence) before the Implied Consent Statutes apply.

10. While Miranda warnings may not be required prior to an arresting officer making an implied consent request, the advisory read to [Webb] specifically advised him that he did not have the right to consult with an attorney prior to giving his decision. That there is no statutory authority for a police officer advising a person who is under arrest that they do not have the right to consult an attorney. Case law that developed that found that an arrested person did not have the right to consult an attorney was a product of the pre–1984 version of 47 O.S. § 756. That the 1984 amendment to the statute that allowed evidence of a refusal into evidence was a response to the U.S. Supreme Court's decision in *South Dakota v. Neville*, [459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983)]. That Oklahoma case law had previously held that evidence of a refusal was not admissible and that the decision on testing was not a critical stage in a criminal proceeding.

11. That statutory changes have eroded the old case law's foundation. Additionally, the amendment of 20 O.S. § 1313.2 in 1987 and 1988 rendered the chemical test advisory/implied consent test request that was used herein untrue and obsolete.

.     .     .     .     .

13. Under the particular facts and circumstances for [DPS] to suspend [Webb's] driver's license on the basis of an untrue chemical test advisory/implied consent test request is unfair and unconstitutional.

DPS appeals.

■ As an initial matter, and as pointed out by Webb, we note DPS has cited an unpublished opinion of the Court of Appeals in support of its argument attacking the timeliness and specificity of Webb's constitutional challenge in contravention of the Rules of Appellate Procedure in Civil Cases.[1] For this "habitual" transgression,[2] Webb prays that DPS's brief be stricken, and the matter considered on Webb's brief only. However, we consider such action far too severe a sanction for DPS's breach of the appellate rules. Nevertheless, under the circumstances of this case, we order DPS's improper citation of authorities stricken without leave to amend, and proceed to the merits of DPS's complaints, first addressing DPS's assertion of Webb's waiver of constitutional objections for failure to specifically and timely raise such objections.

■ In that regard, the evidence adduced below showed that at the time of Webb's arrest and advisement of rights under Oklahoma implied consent law,[3] the Purcell police department had adopted a policy of requesting those arrested for operation of a motor vehicle while under the influence of intoxicating substances to submit to blood testing without offering the alternative of breath testing,[4] and that the Purcell Police Department, as a matter of course, submitted such blood samples obtained to the OSBI laboratory for analysis. Webb asserted below that this policy, when combined with a "false" advisement of a no cost blood test, i.e., in the face of 20 O.S. § 1313.2(C) requiring "any person upon conviction of any misdemeanor or felony offense [to] pay a Laboratory Analysis Fee in the amount of ... $150.00 ... if forensic or laboratory services are rendered by the [OSBI]," violated equal protection guarantees of the Oklahoma and United States Constitutions.[5] That is to say, drivers arrested elsewhere in the State were given the opportunity of a "free" breathalyzer test, while those arrested within the confines of Purcell were required to pay a $150.00 lab fee for blood testing, contrary to the advisement of "no-cost" testing given to Webb, thus violative of the Fourteenth Amendment's guarantee of equal protection of the law.

Contrary to DPS's assertions, however, we find Webb specifically raised the issue of accuracy of the advisement of free chemical testing as a ground for vacation of the order of revocation in his Petition for Review. We therefore find the issue of constitutionality of the advisement fairly encompassed within the grounds set forth by Webb in his Petition, and consequently properly and timely raised.

■ DPS next asserts adequacy of the warning given under 47 O.S. §§ 752–756 and error of the Trial Court in finding of invalidity thereof by application of 20 O.S. § 1313.2 and the constitutional guarantees of equal protection and right to counsel. As to the Trial Court's reliance on § 1313.2, we find the Trial Court erred. That is to say that application of § 1313.2 and payment of the $150.00 lab fee thereunder is triggered *only* in instances where a person

---

1. Rule 1.200 B(E), Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, Ch. 15, App. 2.

2. Webb asserts that DPS has, in three other cases involving Webb's counsel, also relied on unpublished opinions in support of its position.

3. 47 O.S.1991 §§ 751 et seq.

4. The record reflects, however, that the policy was changed shortly after Webb's arrest.

5. Okl. Const., Art. II, § 7; U.S. Const., Amendment XIV.

is "convicted" [6] of a "misdemeanor or felony offense," [7] i.e., a *criminal* charge. Driver's license revocation proceedings are purely *civil* in nature, *not* "quasi criminal" as found by the Trial Court.[8] As Justice Opala has previously noted:

> In *Robertson v. State, ex rel. Lester* we held that a driver's license revocation hearing under the implied consent law then in force was an administrative proceeding, civil/regulatory in nature and distinct from any criminal charge. ... [A] *criminal trial* exacts a personal penalty from the convicted defendant in the form of a fine or incarceration, while a *postacquittal proceeding* to assess one's continued eligibility for a driver's license (as a result of noncompliance with the implied consent law) addresses a person's continued fitness to hold a license.
>
> .    .    .    .    .
>
> Having ... rejected the theory that a revocation hearing is the equivalent of a criminal trial, we likewise recede from the notion that a temporary revocation of one's driver's license is a form of criminal punishment .... Revocation of a driver's license is part of a *civil/regulatory scheme* that serves a governmental purpose vastly different from criminal

punishment.  ... [A] civil revocation proceeding is distinct from criminal law enforcement ....

*Price*, 725 P.2d at 1260.

Further, Webb adduced no evidence below showing that he had been required to pay a fee for the blood testing conducted, thus having failed to demonstrate either an actionable constitutional claim,[9] or falsity of the "no-cost" test advisory. We therefore find the Trial Court erred in application of § 1313.2 to this case.

As to the Trial Court's finding of falsity of the advisory with regard to Webb's right to consultation with an attorney before decision to submit to/refuse testing for blood alcohol, we similarly find the Trial Court erred. Jurisprudence of the United States Supreme Court and the Oklahoma courts has consistently rejected right-to-counsel arguments arising in the context of implied consent advisories as unoffensive to the guarantees of freedom from self-incrimination and right to counsel, that is, such situation *not* involving a "critical stage" of criminal prosecution.[10] Other jurisdictions appear split on the issue, and while we acknowledge some states' recognition of the right to counsel arising in implied consent situations,[11] we discern no such recog-

---

6. 20 O.S. § 1313.2(A)(1) (" 'Convicted' means any final adjudication of guilt, whether pursuant to a plea of guilty or nolo contendere or otherwise, and any deferred or suspended sentence or judgment").

7. 20 O.S. § 1313.2(C).

8. *Price v. Reed,* 725 P.2d 1254, 1261 (Okl.1986); *Robertson v. State, ex rel. Lester,* 501 P.2d 1099, 1101 (Okl.1972).

9. *Dablemont v. State of Oklahoma, ex rel. Department of Public Safety,* 543 P.2d 563 (Okl. 1975) (statute may not be attacked on constitutional grounds by one not injured thereby). See also, e.g., *Matter of Adoption of Blevins,* 695 P.2d 556 (Okl.App.1984) (father had no standing to raise equal protection violation where father showed himself a member of protected class); *Collins v. State,* 561 P.2d 1373 (Okl.Cr.1977) (person must show membership in class set apart by act of legislature to raise equal protection claim).

10. U.S. Supreme Court: See, e.g., *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *United States v. Wade,* 388 U.S. 218,

87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

Oklahoma Supreme Court: See, e.g., *Marquardt v. Webb,* 545 P.2d 769, 773–774 (Okl.1976) (Oklahoma implied consent laws do not violate constitutional guarantees); *Robertson v. State, ex rel. Lester,* 501 P.2d 1099, 1101 (Okl.1972).
Oklahoma Court of Criminal Appeals: See, e.g., *State v. Neasbitt,* 735 P.2d 337 (Okl.Cr.1987); *Sartin v. State,* 617 P.2d 219 (Okl.Cr.1980) (no violation of Fifth Am. guarantees by requiring submission to blood test); accord, *Billy v. State,* 602 P.2d 237 (Okl.Cr.1979); *Ross v. State,* 556 P.2d 638 (Okl.Cr.1976). *Flynt v. State,* 507 P.2d 586 (Okl.Cr.1973) (no violation of Sixth Am. by not allowing presence of attorney at time of decision to submit to/refuse testing for blood alcohol). See also, *State v. Wood,* 576 P.2d 1181 (Okl.Cr.1978) (no violation of Fourth Am. by taking of blood where probable cause exists).

11. Jurisdictions not recognizing right to counsel arising from implied consent advisory: See, e.g., *Parks v. Directory, State DPS,* 592 S.2d 1066 (Ala.Civ.App.1992); *Babb v. Municipality of Anchorage,* 813 P.2d 312 (Alaska App.1991); *Lively*

nition in Oklahoma. We therefore find, as a matter of law, the advisory given Webb free of vitiating constitutional infirmity, and conclude the Trial Court erred in so holding.

■ Where a revocation is based on alleged refusal of testing, the scope of review is limited to whether (1) the officer had reasonable grounds to believe the person had been driving a vehicle while under the influence of alcohol or other intoxicating substance, (2) whether the person was placed under arrest, and (3) whether after advice of rights, the person was informed that his driving privileges would be revoked if testing was refused.[12] On appeal from an order of the District Court, the appellate courts will not reverse or disturb the findings below "if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support [the lower court's] findings."[13] Having reviewed the record, and considering the stipulations of the parties, we find the evidence uncontrovertedly showed that the arresting officer had reasonable grounds to believe Webb had been driving under the influence of alcohol, that the officer placed Webb under arrest therefor, and that the officer accurately advised Webb of his rights and obligations under Oklahoma implied consent law, as well as the consequences of submission to/refusal of testing. This being the case, we hold the Trial Court erred in vacating the order of revocation.

The order of the Trial Court vacating DPS's order of revocation of Webb's driver's license is therefore REVERSED.

HUNTER, J., concurs.

HANSEN, V.C.J., concurs in result.

v. State, 804 P.2d 66 (Alaska App.1991); State v. Degnan, 305 S.C. 369, 409 S.E.2d 346 (1991); Matter of McNeely, 119 Idaho 182, 804 P.2d 911 (App.1990).

Jurisdictions recognizing right to counsel: Friedman v. Comm'r. of Public Safety, 473 N.W.2d 828 (Minn.1991); Gildroy v. Motor Vehicle Division, 102 Or.App. 138, 793 P.2d 332 (1990); State v. Spencer, 305 Or. 59, 750 P.2d

147 (1988); State v. Fitzsimmons, 93 Wash.2d 436, 610 P.2d 893 (1980); Commonwealth v. Richman, 458 Pa. 167, 320 A.2d 351 (1977).

12. 47 O.S.Supp.1988 § 754(E); Smith v. State, ex rel. Dept. of Public Safety, 680 P.2d 365 (Okl. 1984); State ex rel. Dept. of Highways v. Sharpensteen, 538 P.2d 1044 (Okl.1975).

