2005 OK CIV APP 82

**Conrad E. HALEY, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPART-
MENT OF PUBLIC SAFETY, De-
fendant/Appellant.**

No. 101,581.

Court of Civil Appeals of Oklahoma,
Division No. 3.

March 25, 2005.

Rehearing Denied May 6, 2005.

Certiorari Denied Sept. 20, 2005.

As Corrected Sept. 20, 3005.

J. Robert Blakeburn, Department of Public Safety, Oklahoma City, OK, for Appellant.

Stephen G. Fabian, Jr., Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶1 Defendant/Appellant State of Oklahoma, ex rel. Department of Public Safety (DPS), seeks review of the trial court's order vacating the drivers' license revocation of Plaintiff/Appellee Conrad E. Haley (Haley) for lack of a valid arrest. In this appeal, DPS challenges the trial court's order as affected by errors of both law and fact.

¶2 On May 4, 2004, an officer of the Edmond Police Department arrested Haley for operation of a motor vehicle while under the influence of alcohol, and Haley refused to submit to a blood or breath test. DPS issued an order revoking Haley's drivers' license, and upon administrative review, a hearing officer sustained the revocation. Haley then commenced the instant action for judicial review of his drivers' license revocation in the trial court.

¶3 On direct examination at trial, the arresting officer testified:

I noticed the vehicle was slow to change lanes. It would signal its intent to change a lane; it was very slow about changing lanes. As it approached the traffic lights, it would slow down way back behind the traffic lights before it came up for a stop.

. . . . I saw the vehicle coming out of the [Oxford Apartments] driveway on the wrong side of the drive. . . .

It's a—there's a one-way in and a one-way out divided by a grass median.

He was coming out of the—he was coming out of the entrance into the apartment complex.

I made contact with the driver, told him why I had stopped him.

His response was real slow. He—he kind of seemed startled that I had stopped him.

While talking to him, I smelled the odor associated with the consumption of an alcoholic beverage on his breath and person. I saw that he had slow and uncoordinated movements while he was looking for his driver's license and his insurance form.

He—he was able to find the driver's license. He never located his insurance.

I asked him if he'd been drinking.

[He said] [t]hat he'd had one beer.

I then had asked him to get out of his car in order to perform field sobriety tests.

I was able to observe that he was unsteady on his feet.

[H]is speech was slow and mumbled.

[After I completed the field sobriety tests,] I placed him under arrest for driving under the influence.

¶4 On cross-examination, Haley's attorney further questioned the arresting officer concerning the matters to which he testified on direct. Haley's attorney then asked, and the officer answered:

Q: Okay. So did you make the decision to arrest him after you detected the odor?

A: No.

Q: After you had the odor and the slow uncoordinated movements?

A: It was—are you asking with just those two?

Q: Yes.

A: No.

Q: It was after he admitted drinking a beer?

A: No.

Q: After he was unsteady on his feet?

A: No.

The arresting officer then described his administration of a horizontal gaze nystagmus test (HGT) to Haley, and identified the clues of intoxication he detected in the process.

¶ 5 At the close of the evidence, Haley interposed a demurrer and motion for directed verdict, asserting that DPS failed to present evidence showing any driving offense committed in the arresting officer's presence, and therefore, an invalid arrest. Based on the arresting officer's testimony on cross-examination, the trial court agreed with Haley:

It is clear from [the arresting officer's] testimony that he did not rely on his observations of Haley prior to the field sobriety test in his determination to arrest Haley for driving under the influence. Despite the Court's comments suggesting that the officer had not yet testified regarding his reason for determining that Haley was driving under the influence, he was not interrogated on that issue and did not volunteer any information on the issue. Further, the Department did not seek to reopen its case when [Haley] interposed a demurrer and the Court voiced its concern at the absence of such evidence.

. . . .

The information provided by [the arresting officer] when he came into contact with Haley, which information was not sufficient to bring him to the conclusion that Haley was driving under the influence, was not that information in his ken at the moment of arrest. And, while the courts consistently refer to the "prudent man," thus tempting some to argue that the officer, being overly cautious, was not the prudent man, the courts have further instructed us

that the officer must believe he has probable cause to make the arrest. . . .: "The arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (1) has probable cause to arrest the person sought, and (2) reasonably believed the person arrested was the person sought."

In the case at bar, [the arresting officer] did not reasonably believe that Haley was driving under the influence based on the evidence about which he testified in court. Rather, he based the arrest on knowledge which he obtained at a later time, and neither the court nor the litigants have had the opportunity to test that knowledge for its reasonableness or lack thereof. While the Department was given the opportunity to test these waters, it chose not to do so.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the appeal must be sustained and the revocation is both vacated and held for naught. Haley's driving privileges are restored.

(Emphasis original.) (Citations omitted.) DPS appeals.

¶ 6 In its first proposition of error, DPS argues that the question of whether the arresting officer had the statutory "reasonable grounds to believe the person had been operating a vehicle . . . while under the influence" is gauged by an "objective" standard of a "prudent person," and if the testimony and evidence demonstrates facts which would warrant an objective, prudent person to reasonably believe the person had been operating a motor vehicle while under the influence, the officer must be held to have effected a valid arrest. *See,* 47 O.S. 754(F); *McGaughey v. State,* 2001 OK CR 33, ¶¶ 25–26, 37 P.3d 130, 136–137; *Washington v. State,* 1999 OK CR 22, ¶¶ 28, 29, 989 P.2d 960, 971, 972; *Davis v. State,* 1990 OK CR 20, ¶ 21, 792 P.2d 76, 84; *Parker v. Strong,* 717 F.Supp. 767, 768 (W.D.Okl.1989). So, says DPS, given the *objective* indicia of intoxication to which the arresting officer testified—including unusual driving behavior, the odor of alcohol on his breath and person, slow and uncoordinated movements, the admission to consumption of one beer, unsteadiness on his

feet, slow and mumbled speech, and the clues of intoxication discerned in the HGT—the trial court erred in holding the arresting officer's testimony did not demonstrate his *subjective* formation of "reasonable grounds to believe" Haley had been operating his vehicle while under the influence sufficient to justify the arrest. *See, Smith v. State ex rel. Dept. of Public Safety,* 1984 OK 16, ¶¶ 2, 4, 680 P.2d 365, 367; *Application of Baggett, 1974 OK 95,* ¶¶ 2, 12, 17, *531 P.2d 1011,* 1014, 1016.

¶ 7 Haley responds, arguing that the "burden of establishing probable cause in the mind of the initiating officer is upon" DPS. *Grimes v. State,* 1974 OK CR 214, ¶ 3, 528 P.2d 1397, 1400. That is, "[t]he test of a warrantless arrest is whether, at the moment of the arrest, the officer had probable cause to make it: Whether at that moment he had reasonably trustworthy knowledge of facts and circumstances sufficient to warrant the belief of a prudent person that the suspect had committed or was committing a felony," and that "mere suspicion is not a substitute for probable cause." *Swain v. State,* 1980 OK CR 120, ¶ 6, 621 P.2d 1181, 1182; *McDonald v. State,* 1977 OK CR 297, ¶ 11, 569 P.2d 1014, 1017. So, says Haley, because the officer did not "point to specific articulable facts and say 'that is why I arrested him,'" DPS failed in its burden of proof to show a valid arrest based on probable cause.

## STANDARD OF REVIEW

¶ 8 "Where a revocation is based on alleged refusal of testing, the scope of review is limited to whether (1) the officer had reasonable grounds to believe the person had been driving a vehicle while under the influence of alcohol or other intoxicating substance, (2) whether the person was placed under arrest, and (3) whether after advice of rights, the person was informed that his driving privileges would be revoked if testing was refused." *Webb v. State ex rel. Dept. of Public Safety,* 1992 OK CIV APP 131, ¶ 10, 848 P.2d 35, 39; 47 O.S. 754(F). "Appeals from implied consent revocation orders are heard de novo in the district court, both on the law and on the facts[,]" and on district court review, DPS bears the burden of proof

by a preponderance of the evidence. *Pletcher v. State ex rel. Dept. of Public Safety,* 2003 OK 117, ¶ 3, 84 P.3d 725, 726; *Appeal of Tucker,* 1975 OK CIV APP 40, ¶ 8, 538 P.2d 626, 629.

¶ 9 Further, "[a]n appeal may be taken by the person or by the Department from the order or judgment of the district court to the Supreme Court of the State of Oklahoma as otherwise provided by law." 47 O.S. 6-211(M). "On appeal from the district court in license revocation matters, we consider questions of law without deference to the trial court[;][t]he trial court's factual findings, however, will not be disturbed if there is any evidence in the record to support them and they are free of legal error." *Polk v. State ex rel. Dept. of Public Safety,* 1996 OK CIV APP 100, ¶ 4, 927 P.2d 55, 56; *Fink v. State ex rel. Dept. of Public Safety,* 1992 OK CIV APP 169, ¶ 5, 852 P.2d 774, 776; *Smith,* 1984 OK 16, ¶ 7, 680 P.2d at 368.

## VALIDITY OF ARREST— PROBABLE CAUSE

¶ 10 Oklahoma law requires, and appellate decisions of this state have consistently recognized, a valid arrest as necessary to invoke a police officer's right under statute to request submission to a test for blood alcohol. 47 O.S. 751(A); *Appeal of Dungan,* 1984 OK 21, ¶ 12, 681 P.2d 750, 752; *Smith, 1984 OK 16,* ¶ 3, 680 P.2d at 366; *White v. Oklahoma Dept. of Public Safety,* 1980 OK 21, ¶ 6, 606 P.2d 1131, 1132. A valid arrest is predicated upon either commission of an offense in the arresting officer's presence, or upon probable cause to believe an offense has been committed:

[A] police officer acting to preserve the peace and prevent crime has the right to make reasonable inquiry of persons observed under circumstances which reasonably suggest that a crime has been, or is being committed[,] [and may stop] motorists when [the] officer is convinced that a vehicle is being operated in a way which menaces the driving public. An officer may stop a moving vehicle not only when he directly observes a violation of the law, but also when specific articulable facts in-

dicate probable cause to believe a violation of the law is present. If, after properly stopping the vehicle, the officer observes a misdemeanor, the subsequent arrest is lawful.

*Smith*, 1984 OK 16, ¶ 3, 680 P.2d at 367.

 ¶ 11 In this respect, "speeding, driving at an usually slow rate, or from one side of the road to the other are certainly grounds for an officer to stop the motorist involved, whatever the reason for such operation of such vehicle." *Moore v. State*, 1957 OK CR 10, ¶ 16, 306 P.2d 358, 360. And, there can be no doubt that whether the police officer had probable cause is considered from an objective point of view: "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred[,] .... [and] 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken *as long as the circumstances, viewed objectively, justify that action.*'" *Whren v. U.S.*, 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 1772, 1774, 135 L.Ed.2d 89 (U.S. (D.C.) 1996). (Emphasis added.) (Citations omitted.)

¶ 12 On direct examination, the arresting officer described his observation of Haley's erratic driving—slowly changing lanes, slowly approaching intersections, and exiting an apartment complex parking lot through its entrance—which prompted his stop and further inquiry of Haley. The trial court held the arresting "officer properly made contact with Haley by stopping him after the officer noticed Haley exit from an apartment complex utilizing the entry...."

¶ 13 Also on direct, the arresting officer described Haley's appearance and actions upon his further inquiry—smelling of alcohol, unsteadiness on his feet, and mumbled speech—which prompted his administration of the HGT field sobriety test to the driver, the indicia of intoxication discerned, and his subsequent arrest of Haley for DUI. Viewed objectively, the arresting officer's articulation of his specific, pre-arrest observations of Haley's demeanor, acts and appearance, including the indicia of intoxication discerned upon administration of the HGT, would wholly justify a prudent person to reasonably believe Haley was operating his motor vehicle while under the influence of alcohol, and established the officer's probable cause for the arrest.

¶ 14 The trial court's conclusion that the officer did not articulate specific, objective facts establishing probable cause for the arrest is contrary to law and unsupported by the evidence adduced. The order of the trial court is therefore REVERSED, and the cause REMANDED.

HANSEN, J., and BUETTNER, C.J., concur.